James F. BICKNELL, and Debra S. Bicknell, Appellants,

v.

Joseph H. STANLEY, and Billie Stanley, Appellees.

In re James F. BICKNELL and Debra S. Bicknell, Debtors.

Joseph H. STANLEY, and Billie Stanley, Plaintiffs,

v.

James F. BICKNELL, and Debra S. Bicknell, Defendants.

No. TH90–13–C.
Bankruptcy No. 88–01306TH.
Adv. No. 88–0149.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 28, 1990.

654

Gary Lynn Hostetler, Jeffrey E. Ramsey, Hostetler & Kowalik, P.C., Indianapolis, Ind., for Bicknells.

W.F. Conour, Rex E. Baker, Conour & Doehrman, Indianapolis, Ind., for Stanleys.

## ORDER ON APPEAL FROM DECISION OF BANKRUPTCY COURT

McKINNEY, District Judge.

### I. *Introduction:*

On its surface, this bankruptcy appeal presents an easy case to resolve. As will be seen, though, first impressions are often deceiving. The central issue is whether an agreed judgment entered into in state court by the debtors and the creditors in a pre-bankruptcy action should be given collateral estoppel effect in a bankruptcy dischargeability proceeding.

If the Court follows the standard announced by the Seventh Circuit in *Klingman v. Levinson*, 831 F.2d 1292, 1297 (7th Cir.1987), the prior action will not preclude relitigation of issues relating to the dischargeability of certain debts. This is so because *Klingman* requires an agreed judgment to clearly indicate that the parties intended issues to be foreclosed in future litigation, and the Agreed Judgment entered into in the prior state-court action in this instance does not meet this standard, at least not at summary judgment.

On the other hand, if this Court applies the standard set forth by the Indiana Court of Appeals in *Hanover Logansport v. Robert C. Anderson, Inc.*, 512 N.E.2d 465 (Ind. App.1987), the prior action will preclude relitigation of such issues. This is so because *Hanover Logansport* arguably supplies a presumption of preclusion unless an issue is expressly reserved for future litigation in an agreed judgment, and the Agreed Judgment in this case would not meet such a standard.

The difficulty in this case is not only in choosing between these competing standards, but also determining, in light of other persuasive authority, whether either standard is correct. As will be seen, this task requires a somewhat lengthy analysis in order to reach the proper conclusions. The first step, though, is to set forth the background for this appeal.

## II. *Factual and Procedural Background:* [1]

The Bicknells operated a mobile home park in Greencastle, Indiana. They decided to incorporate the enterprise and sold shares of stock in the corporation to the Stanleys. The next year, however, the Stanleys were discontented with their investment and brought an action in state court against the Bicknells for violations of state securities laws and for common-law fraud. The Stanleys sought $65,100 plus punitive damages and pre-judgment interest under state securities laws in one count of the complaint, as well as $195,300 (inclusive of treble damages) and prejudgment interest and attorneys fees for common law fraud under another count.

In the securities law count, the Stanleys alleged that the Bicknells failed to register the sale of stock pursuant to Ind.Code § 23-2-1-3. No other specific allegations were included in this count. In the common law fraud count, the Stanleys alleged that the Bicknells solicited the purchase of stock from the Stanleys through misrepresentations and omissions of material facts, including:

[1] failure to inform the Stanleys that Bicknell was the owner of 2,000 shares of stock at [a certain price] per share;

[2] failure to inform Stanleys of how many lots were to be purchased by [the corporation];

[3] and the failure to disclose to the Stanleys the total amount of financing to be raised by the sale of securities in [the corporation].

(Complaint at ¶ 18). No other specific allegations of fraud were made in the state-court Complaint.

The state-court action was resolved in August of 1988 by way of an "Agreed Judgment" between the parties. Without delineating any underlying facts, the parties agreed that "judgment should be entered on the Complaint," and the Bicknells agreed to pay the sum of $88,250 in periodic installments. The Agreed Judgment neither discussed nor reserved any particular claims or issues.

Approximately one month later on September 15, 1988, the Bicknells filed a Chapter 7 petition in Bankruptcy Court. Listed on the Debtors' Schedule of unsecured claims was the $88,250 debt to the Stanleys stemming from the Agreed Judgment. Thereafter the Stanleys initiated the present adversary proceeding by filing a Complaint Objecting to Discharge. In their Complaint, the Stanleys alleged that the Debtors had previously admitted fraud and misrepresentation in the Agreed Judgment, and that the debt should be nondischargeable under 11 U.S.C. § 523(a)(2)(A). This Code Section states that a debtor is not discharged from any debt to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

■ The Stanleys also filed a motion for summary judgment, arguing that the Debtors should be collaterally estopped from relitigating the dispositive fraud issue under the nondischargeability provision of § 523(a)(2)(A). In support of their motion, the Stanleys proffered only the Complaint and the Agreed Judgment filed in the state-court action. Although the Stanleys' motion for summary judgment contained numerous unsworn references to other purported evidence, no affidavits, discovery materials, or other evidence is found in the record.[2] Although the Debtors argued

---

**1.** There is a companion appeal to this one that is virtually identical in all respects. *See Butler v. Stanley,* TH90–33C. Just as the underlying order, the record below, and the appellate briefs were the same, so too are the decisions in each case virtually identical. Because the cases were never consolidated, a full opinion is produced for each appeal.

**2.** For instance, the Stanleys referred to purported settlement discussions between the parties in

that dischargeability issues are within the exclusive jurisdiction of the Bankruptcy Court, the Stanleys' motion was granted.

### III. *The Decision Below:*

In a seven-page written opinion, the Bankruptcy Court held that the state-court Agreed Judgment operated to bar further litigation of any fraud issues under the doctrine of collateral estoppel, which is also known as issue preclusion.[3] After setting forth the Seventh Circuit's standard from *Klingman*, which allows issue preclusion from a consent judgment only if that judgment clearly shows that the parties intended issues to be foreclosed in future litigation, the Bankruptcy Court then suddenly shifted, without explanation, to the seemingly contrary standard used by the Indiana Court of Appeals in *Hanover Logansport*.

Under *Hanover Logansport*, an agreed judgment will have preclusive effect unless a claim is reserved by express incorporation in the judgment. Applying this standard, the Bankruptcy Court held that "no reservation was made in the Agreed Judgment between the plaintiff and the defendants in the matter at bar." The court added, "Because the parties negotiated the Agreed Judgment under Indiana law, and because no reservation was made, the Agreed Judgment shall collaterally estop the defendants from relitigating the questions decided in the state-court." The Bankruptcy Court thus held that the debt was nondischargeable under § 523(a)(2)(A).

The Debtors filed a timely appeal from the Bankruptcy Court's entry of judgment, and this Court has jurisdiction to hear the matter. Before reaching the issues raised, the appropriate standard of review must be outlined.

the state court action, as well as "assurance by the [Bicknells] that payment of the amount owed would be forthcoming...." The motion also averred that bankruptcy "was a likely possibility...." (Motion at 3), and stated that the Agreed Judgment provided for payment "of the full amount of [the Stanleys'] damages including interest and costs in the sum of $88,250.00." (Motion at 4). None of these unsworn statements from the motion for summary judgment was supported by evidence, and as such cannot be considered by this Court (nor the Bankruptcy

### IV. *Standards of Review:*

In reviewing a decision of the bankruptcy court, this District Court acts as an appellate tribunal and is governed by traditional standards of appellate review. Where, as here, only legal issues are in question, the decision must be reviewed *de novo*. *Excalibur Auto Corp.*, 859 F.2d 454, 457, n. 3 (7th Cir.1988); *Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988).

Indeed, appellate courts are required to give *de novo* review to summary judgment decisions. *Toys "R" Us, Inc. v. NBD Trust Co.*, 904 F.2d 1172, 1175–76 (7th Cir.1990); *Central States, S.E. & S.W. Areas Regional Pension Fund v. Jordan*, 873 F.2d 149, 152 (7th Cir.1989). This is equally true in this setting where the Bankruptcy Court ruled on a summary judgment motion. *In re Tobman*, 107 B.R. 20, 23 (S.D.N.Y.1989). This is so because in adversary proceedings, the bankruptcy courts are required to follow the same summary judgment standards used by the district courts in general civil litigation. *See* Bankruptcy Rule 7056 ("Rule 56 F.R.Civ.P. applies in adversary proceedings."); *In re Brown*, 79 B.R. 789, 792 (Bankr.N.D.Ill. 1987).

In this light, it should be noted that, although both appellate briefs are otherwise well written, the Stanleys' brief contains numerous references to purported "evidence" that is not in the record. Included among the brief's "Statement of Facts" are the following unsupported comments:

—[The Stanleys] paid for the stock by mortgaging their home....

Court in the first instance). As is discussed later, this practice continued in the Stanleys' appellate brief.

3. As is discussed later in this opinion, the terms "collateral estoppel" and "issue preclusion" refer to the same doctrine, and are different from "res judicata" or "claim preclusion." This Court will from this point on use the term "issue preclusion" to refer to the former doctrine.

—In August of 1987, [the Stanleys] ... discovered that [the corporation] was fast approaching insolvency.

—The Bicknells were advised by their attorney that the Agreed Judgment admitting fraud and illegal conduct would not be dischargeable in bankruptcy proceedings.

—The Bicknells ... are also the subject of a criminal investigation by the Putnam County Prosecutor's Office....

Brief. at 2–4).

The reference to the Debtors' attorney purportedly advising the Debtors of the preclusive effect of the Agreed Judgment, which is repeated again at pages 6 and 12 of the brief, is particularly inappropriate for several reasons. First, as noted before there is no evidence in the record supporting this assertion. It is axiomatic that admissible evidence rather than unsworn commentary must be used to support and defend motions for summary judgment. *See* Fed.R.Civ.P. 56(e); *Mid–State Fertilizer v. Exchange National Bank,* 877 F.2d 1333, 1339–40 (7th Cir.1989).

Second, putting aside for the moment any issues of attorney-client privilege, even if the statement had been proffered by affidavit it could well be inadmissible in its present form. Such a statement would appear to be hearsay because it is an out-of-court statement purportedly made by the other party's attorney, and it is offered for the truth of the matter asserted (i.e., the statement offered is one by the Stanleys reciting a statement made by the Debtors' attorney that "the Agreed Judgments would not be dischargeable in bankruptcy."). Again, it is now settled that non-hearsay evidence must be used at summary judgment. *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 570 (7th Cir. 1989).

Thus, in determining *de novo* whether summary judgment was properly granted in this case, this reviewing Court will look only to the record below. All evidence and any reasonable inferences that can be made will be taken favorably for the non-movant Debtors. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987). Unsupported statements of counsel are, of course, of no moment in the analysis, but instead detract from the issues.[4]

## V. *Discussion:*

### A. General Preclusion Concepts:

As a preliminary matter, it is necessary to briefly outline the doctrines of claim preclusion (also known as res judicata) and issue preclusion (also known as collateral estoppel). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Under issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.*

Thus, although related, the doctrines of claim preclusion and issue preclusion are distinct concepts. Indeed, as the Supreme Court has explained in a case in which it held that claim preclusion is inappropriate in the dischargeability setting of a bankruptcy case, "Whereas [claim preclusion] forecloses all that which might have been litigated previously, [issue preclusion] treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). Issue preclusion is thus a "narrower principle" than claim preclusion. *Id.*

The Seventh Circuit has expounded on this difference, writing:

**4.** The brief contains several other statements that are also inappropriate. For instance, counsel writes that the "Bankruptcy Code is not and should not be a haven for criminals or those who engage in nefarious schemes to defraud individuals." (Br. at 14). Implicit in this statement is that the Debtors are or will someday be "criminals." Besides being unsupported by the record, the statement is irrelevant to the issues at hand. Regardless of whether the Debtors were criminals, the analysis would be the same.

658

[Claim preclusion] bars the relitigation of claims that could have been advanced in an earlier proceeding, whether they were or not, because they arise out of the same facts. The purpose is to reduce the costs of litigation, to the parties and to the courts, by forcing closely related claims to be combined in a single lawsuit.... The doctrine of [issue preclusion] is based on a different concept of economy of litigation: if an issue happens to have been litigated and determined in a previous suit between the parties, there is no reason to litigate it again. But the object is not to force the issue to be litigated in the earlier suit. The propriety of having two suits is accepted, presumably because they are not that closely related; and if the issue in question is first litigated in the second suit, that is fine; the only desideratum is that it not be litigated twice.

*Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir.1982). Indiana recognizes the same distinction between these concepts. *See, e.g., Town of Flora v. Indiana Service Corp.*, 222 Ind. 253, 53 N.E.2d 161 (1944); *Hardesty v. Bolerjack*, 441 N.E.2d 243, 245 (Ind.App. 1982).

Today's case involves issue preclusion, and is governed by the relevant standards of this doctrine. The related concept of claim preclusion is thus inapplicable; as will be seen, this is an important point in this case.

As noted previously, there are two seemingly contradictory standards for issue preclusion that could be applied in this case. Both of these standards were discussed by the Bankruptcy Court, but the Indiana Court of Appeals' methodology from *Hanover Logansport* was selected without any real explanation as to why a state standard is appropriate. Because the proper selection of standards could be outcome determinative in this case, it is necessary to analyze whether a federal or state rule should be applied. This entails a discussion of the federal full faith and credit statute.

**B. The Full Faith and Credit Statute:**

**1. *General Principles:***

Two hundred years ago, and as one of its first acts, Congress passed a statute that remains on the books in essentially the same form today. Specifically, Congress enacted a law that required a state-court judgment to be accorded "such faith and credit" as it would have "by law or usage in the courts of the state" in which it was rendered. Act of May 26, 1790, c. 11, 1 Stat. 122, 28 U.S.C. § 1738. "In essentially unchanged form," *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982), the Act now provides:

[T]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state.

28 U.S.C. § 1738.

In light of this statute, the general rule in the federal courts is that "a state-court judgment commands the same [preclusive] effects in federal court that it would have in the court that entered it." 18 C. Wright & A. Miller, *Federal Practice and Procedure* § 4469 at 659–60 (2d ed. 1981) [hereinafter "*Wright and Miller*"]. Indeed, in a wide variety of settings the Supreme Court has held that the full faith and credit statute must be followed.

For instance, in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that prior state-court judgments dealing with issues that could be the subject of civil rights claims under 42 U.S.C. § 1983 are entitled to preclusive effect in federal court if such effect would be given under the state's issue preclusion rules. The *Allen* Court based its holding on the full faith and credit statute, writing, "[Al]though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of *other federal courts*, Congress has specifically required all federal courts to give preclusive effect to

*state-court judgments* whenever the courts of the State from which the judgments emerged would do so...." *Id.* (citing 28 U.S.C. § 1738) (emphasis added).

The *Allen* Court rejected the argument that the special role of the federal courts in protecting civil rights operates to negate the effect of § 1738. According to the *Allen* majority, "[N]othing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738." *Allen,* 449 U.S. at 97–98, 101 S.Ct. at 416. The Court added that § 1983 "creates a new federal cause of action" and "says nothing about the preclusive effect of state court judgments." *Allen,* 449 U.S. at 98, 101 S.Ct. at 416–17. Although the Court acknowledged the Congressional concern behind § 1983 "that the state courts had been deficient in protecting federal rights," *Id.* at 98–99, 101 S.Ct. at 417, the Court found this insufficient to negate the full faith and credit statute because "repeals by implication are disfavored." *Id.* at 99, 101 S.Ct. at 417.

Moreover, the *Allen* Court noted that Congress knows how to write a statute that would prevail over § 1738, explaining:

> By contrast, the roughly contemporaneous statute extending the federal writ of habeas corpus to state prisoners expressly rendered 'null and void' any state-court proceeding inconsistent with the decision of a federal habeas court, and the modern habeas statute also expressly adverts to the effect of state-court criminal judgments by requiring the applicant for the writ to exhaust his state-court remedies, and by presuming a state-court resolution of a factual issue to be correct except in eight specific circumstances....

*Allen,* 449 U.S. at 98 n. 12, 101 S.Ct. at 417 n. 12.

Two years later the Supreme Court revisited this area. In *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court similarly held that the federal employment discrimination remedies of Title VII do not supersede the "principles of comity and repose embodied in § 1738." *Id.* at 463, 102 S.Ct. at 1887. As in *Allen,* the Supreme Court again focused on whether there is an implied exception to the full faith and credit statute by virtue of Title VII, and found no such exception in light of the "cardinal principle" of statutory construction that repeals by implication are not favored. *Id.* at 468, 102 S.Ct. at 1890–91.

Three years later the Supreme Court addressed this issue in the antitrust setting, which, unlike § 1983 and Title VII, is a substantive area of law committed to the exclusive jurisdiction of the federal courts.[5] In *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274, (1985), the Supreme Court squarely held that the Seventh Circuit had erred by failing to look to state law to determine the preclusive effects of a state-court judgment. As in previous cases, the *Marrese* Court focused on the mandate of § 1738, writing that this statute "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered." *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332.

The Court then questioned the argument that the exclusive federal jurisdiction over antitrust claims somehow negated the effect of § 1738. The Court wrote that its decisions "indicate that a state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts." *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332.

More importantly, the Supreme Court confirmed the approach that should be taken in these settings. Initially, "§ 1738 requires a federal court to look first to state preclusion law in determining the preclu-

---

5. In deciding *Kremer,* the Supreme Court expressly declined to decide whether Title VII claims lie within the exclusive jurisdiction of the federal courts. More recently, though, the Supreme Court ruled that Title VII actions may be maintained in either state or federal court. *Yellow Freight System, Inc. v. Donnelly,* —— U.S. ——, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

sive effects of a state court judgment." *Marrese*, 470 U.S. at 381, 105 S.Ct. at 1332. This step is prudent because "[r]eference to state preclusion law may make it unnecessary to determine if the federal court, as an exception to § 1738, should refuse to give preclusive effect to a state court judgment." *Marrese*, 470 U.S. at 383, 105 S.Ct. at 1333. "The issue whether there is an exception to § 1738 arises only if state law indicates that litigation of a particular claim or issue should be barred in the subsequent federal proceeding." *Marrese*, 470 U.S. at 383, 105 S.Ct. at 1333.

In closing its opinion, the *Marrese* Court then summarized the appropriate methodology, writing:

> In this case the [Seventh Circuit] should have first referred to Illinois law to determine the preclusive effect of the state judgment. Only if state law indicates that a particular claim or issue would be barred, is it necessary to determine if an exception to § 1738 should apply. Although for purposes of this case, we need not decide if such an exception exists for federal antitrust claims, we observe that the more general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary con-

sideration must be the intent of Congress. *Marrese*, 470 U.S. at 386, 105 S.Ct. at 1335.

Thus, these Supreme Court cases hold that the starting point in any discussion of the preclusive effect of a state-court judgment must be, by virtue of § 1738, the preclusion law of the state in question. Only if state law would direct preclusion is it appropriate to consider whether a repeal of § 1738 by implication can be found.[6]

### 2. Application (or not) of § 1738 in the bankruptcy discharge setting:

■ Despite these clear pronouncements from the Supreme Court, the mandate of § 1738 and the methodology established thereunder have, with some recent exceptions, been largely ignored in the bankruptcy setting presented today. This strange phenomenon has been noted by several courts and commentators in recent years. As one commentator wrote even before *Marrese* was decided:

> The usual rule, followed by most federal courts, of giving state court judgments whatever preclusive effect they would be given by the law of the state whose court rendered judgment has been largely ignored by the bankruptcy courts. Instead, the bankruptcy courts have applied federally developed rules of issue preclusion, often without acknowledgement of the customary practice.

J. Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* (First Installment) 58 Am.Bankr.L.J. 349, 357 (1984). *Accord, In re Wagner,* 79 B.R.

---

**6.** A separate issue that could arguably arise in some cases is whether the minimum procedural requirements of the Due Process Clause would be met by applying issue preclusion. As the Seventh Circuit has noted, "One general limitation is that the concepts of claim and issue preclusion cannot apply when the party against whom the earlier judgment is asserted did not have a full and fair opportunity to litigate the issue in the earlier case." *Jones v. City of Alton, Illinois,* 757 F.2d 878, 884 (7th Cir.1985). "When the prior determination is by a state court, and so the federal court is bound by 28 U.S.C. § 1738, whether the first adjudication offered a full and fair opportunity to litigate the issue is determined by the Due Process Clause of the Fourteenth Amendment." *Id.*

This separate constitutional requirement is distinct from § 1738, and is not properly considered an "exception" to this statute. Where the issue is raised, it would seem that the courts would be governed by the general notion that constitutional issues should only be decided in the last instance. In any event, there is no argument in this case that the Due Process Clause would be offended by application of issue preclusion. Indeed, in light of the fact that *most if not all jurisdictions require actual litigation* as a prerequisite to issue preclusion, it seems that the due process issue would rarely be reached.

1016, 1019 (Bankr.W.D.Wis.1987) (noting that § 1738 has been ignored, but then following *Marrese*); *In re Byard*, 47 B.R. 700, 703 (Bankr.M.D.Tenn.1985) (same).

Indeed, even the Seventh Circuit, in the *Klingman* decision discussed previously in this opinion, appears to have fallen prey to this trend that began in the bankruptcy courts. In *Klingman*, the Seventh Circuit was presented with a bankruptcy appeal in which a state court judgment had been given preclusive effect in a dischargeability issue. Without ever citing to § 1738 or otherwise explaining its choice of a standard, the panel applied a federal standard of issue preclusion. A lengthy quotation from the opinion demonstrates this:

> As stated by the district court and acknowledged by the parties, there are four requirements for collateral estoppel: 1) the issue sought to be precluded must be the same ..., 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action. *See Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452, 456 n. 3 (7th Cir.1987); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th Cir.1986); *Ferrell v. Pierce*, 785 F.2d 1372, 1384–85 (7th Cir.1986).
>
> \*      \*      \*      \*      \*      \*
>
> 'Justice ... is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions.*' 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1984). As stated in *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530 (5th Cir.1978), if the parties to a consent decree 'indicated clearly the intention that the decree ... shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated.'

*Id.* at 539; *see also* ... 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4443, at 382 (1981) ('Issue preclusion does not attach unless 'it is clearly shown that the parties intended that the issue be foreclosed in other litigation.').

*Klingman*, 831 F.2d at 1295, 1296.

The *Klingman* panel is not the only court that has not followed § 1738, for scores of opinions in bankruptcy cases have done precisely the same thing. *See, e.g., In re Halpern*, 810 F.2d 1061 (11th Cir.1987) (no mention of § 1738 in same setting); *United States Life Title Ins. Co. v. Dohm*, 19 B.R. 134, 137 (N.D.Ill.1982) (stating that "a Bankruptcy Court may in its discretion decline to apply collateral estoppel" from a state-court judgment). Other cases have noted the existence of § 1738 and the Supreme Court cases construing it, but have nonetheless, without sufficient explanation, not followed the state rule of preclusion. *See In re Tomsic*, 104 B.R. 22, 33 (Bankr. N.D.Ind.1987) (noting that § 1738 has been ignored in bankruptcy, but then applying the "general [federal] test most frequently applied"); *In re Rudd*, 104 B.R. 8, 14 (Bankr.N.D.Ind.1987) (same).

Still other courts in the Seventh Circuit, in decisions post-dating *Klingman*, have simply followed *Klingman* without any acknowledgement of § 1738. *See, e.g., Cohen v. Bucci*, 103 B.R. 927, 929 (N.D.Ill. 1989); *In re Martinez*, 110 B.R. 353, 355 (Bankr.N.D.Ill.1990); *In re Seaton*, 98 B.R. 419, 422 (Bankr.C.D.Ill.1989); *In re Nunez*, 95 B.R. 566, 571 (Bankr.N.D.Ill.1988).

As noted previously, if the *Klingman* standard of issue preclusion applies to this case, then this appeal would be rapidly concluded. The *Klingman* standard requires the prior agreed judgment to clearly indicate that future issues will be precluded, and the Agreed Judgment in this case falls well short of that standard. Indeed, other than stating that it is a judgment on the Complaint, the Agreed Judgment does not recite a single underlying fact or otherwise contain specific admissions.

After careful consideration, and with due respect to the *Klingman* panel, this Court

concludes that the *Klingman* standard is inaccurate in this setting because it applies federal rather than state rules of preclusion and is thus in conflict with § 1738.[7] The Court reaches this conclusion for three reasons.

First, it takes no great discussion to show that the mandates of § 1738 and the Supreme Court decisions interpreting it are binding on this District Court. The Seventh Circuit has stated that Supreme Court decisions are "absolutely binding" on inferior courts. *Hendricks County R.E.M.C. v. N.L.R.B.*, 627 F.2d 766, 769 (7th Cir. 1980), *rev'd on other grounds* 454 U.S. 170, 102 S.Ct. 216, 70 L.Ed.2d 323 (1981). Moreover, the fact that § 1738 and the cases thereunder were not specifically discussed in *Klingman* leads to the conclusion that the implicit decision to apply federal preclusion standards in that case is of little precedential value.

Indeed, it is not uncommon for the parties to fail to raise the specter of § 1738 when litigating issue preclusion from a state court judgment. *See, e.g., United States v. U.S. Currency, The Amount of $228,536*, 895 F.2d 908, 917 (2d Cir.1990) ("Although *not raised by the parties*, it is clear that the preclusive effect of a state court judgment is measured by state law [under] 28 U.S.C. § 1738."); *Seevers v. Arkenberg*, 726 F.Supp. 1159, 1166 (S.D. Ind.1989) (same). It seems likely that this occurred in *Klingman* as well, and the lack of any discussion of the issue is significant. *See United States v. Crawley*, 837 F.2d 291, 292–93 (7th Cir.1988) (dictum can be rejected by inferior court if the passage was unnecessary to outcome of earlier case or issue addressed in passage was not presented as an issue and hence not refined by fires of adversary presentation). Indeed, both the initial bankruptcy court decision and the district court's opinion in

*Klingman* made no mention of § 1738. *See* 58 B.R. 831, 835 (Bankr.N.D.Ill.1987); 66 B.R. 548, 552 (N.D.Ill.1986). Thus, this District Court finds itself bound by § 1738, *Kremer*, and *Marrese* to a greater extent than by *Klingman*.

Second, there are Seventh Circuit cases in other settings in which the force of § 1738 has been readily recognized. For instance, in *Jones v. City of Alton, Illinois*, 757 F.2d 878, 883 (7th Cir.1985), the panel wrote that it is "well settled that a state court judgment must be given the same *res judicata* effect in federal court that it would be given in the courts of the rendering state." Similarly, in *County of Cook v. Midcon Corp.*, 773 F.2d 892, 898 (7th Cir.1985), another panel of the Seventh Circuit held that even assuming that RICO claims can only be brought in federal court,[8] the Supreme Court's decision in *Marrese* "makes it clear that this circumstance would not eliminate the need for examining state preclusion law to determine the collateral estoppel effect of a previous state court judgment." This decision speaks loudly in this context where bankruptcy courts are given exclusive jurisdiction over dischargeability of debts.

Numerous other decisions from various panels of the Seventh Circuit recognize the mandate of § 1738 as well. *See, e.g., Donnelly v. Yellow Freight Systems, Inc.*, 874 F.2d 402, 407 (7th Cir.1989) ("§ 1738 requires federal courts to afford the same full faith and credit to state-court judgments that would apply in the state's own courts."); *Durhan v. Neopolitan*, 875 F.2d 91, 94 (7th Cir.1989) (same); *Wozniak v. DuPage County*, 845 F.2d 677, 680 (7th Cir.1988) (same); *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987) (same); *Spartacus, Etc. v. Bd. of Trustees of Illinois*, 502 F.Supp. 789, 795 (N.D.Ill.1980)

---

**7.** It could be that the federal and state standards in the setting presented in *Klingman* were the same. That is to say, it is possible, indeed likely, that Illinois would use the same preclusion rules as those set forth by the Seventh Circuit. Nonetheless, § 1738, as interpreted by the Supreme Court, requires the state rule to be examined and applied first, and there is no indication that this occurred in *Klingman*.

**8.** The Supreme Court recently held that RICO claims can be maintained in state or federal court; there had previously been a split on this issue throughout the country. *See Tafflin v. Levitt*, —— U.S. ——, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990).

(same). These decisions support the conclusion that *Klingman* is not binding in today's setting.

Third, despite the many decisions to the contrary, some courts have taken note of and applied the requirements of § 1738 in the bankruptcy context. For instance, in *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn. 1985), a bankruptcy judge noted that "the general rules of application of § 1738 have been ignored by the federal courts in bankruptcy cases." *Id.* at 703. The *Byard* court even pointed out that the Sixth Circuit in which it sits "is an example." *Id.* at 704. The court explained that in *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), the Sixth Circuit "did not first determine the collateral estoppel effect of such a judgment under the laws of Ohio, but instead applied a standard developed from other federal cases." *Byard*, 47 B.R. at 704.

As in today's setting, the *Byard* case "illustrates the very real effect on litigants of selecting a federal rule for application of collateral estoppel rather than the test which would be applied by the state of judgment." *Id.* In *Byard*, as here, application of the federal rule would not allow issue preclusion, while the relevant state standard might.

The *Byard* court, though ordinarily bound by Sixth Circuit precedent, nonetheless held that the Sixth Circuit's *Spilman* decision should not be followed. The court wrote:

> *Spilman* was decided by the Sixth Circuit before the developments in the law of full faith and credit signaled by the Supreme Court in *Kremer, Migra* [*v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ] *McDonald* [*v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) ] and *Marrese*. In the opinion of this writer, were the Sixth Circuit to now consider the issues presented in *Spil-*

> *man*, the court would approach the collateral estoppel question differently. *Marrese* ... illustrates how federal courts must determine the preclusive effect of state court judgments.

*Byard*, 47 B.R. 704–05. Moreover, as in the Seventh Circuit, the *Byard* court noted that the Sixth Circuit had taken note of the mandate of § 1783 in another setting.

Similarly, a bankruptcy court in the Seventh Circuit has distinguished *Klingman* and chosen not to follow its implicit federal standard. Specifically, in the case of *In re Wagner*, 79 B.R. 1016 (Bankr.W.D.Wis. 1987), the bankruptcy court acknowledged the *Klingman* decision, but then stated it was "cognizant of a recent line of Supreme Court cases in which the Court has re-examined the interplay between a grant of federal jurisdiction and preclusion principles." *Id.* at 1018–19. After tracing § 1738, the Supreme Court cases, and the *Byard* decision, the bankruptcy court applied, without specifically criticizing *Klingman*, the preclusion rules of Wisconsin.

The *Wagner* court's subtle deference to the *Klingman* panel is understandable, but in light of all the foregoing, (including the fact that many courts unknowingly cite to *Klingman* without any discussion of § 1738), it is appropriate, indeed necessary, to state unequivocally that the *Klingman* standard is not applicable to cases involving prior state-court judgments. Although the federal and state standards for preclusion will often be the same, 18 *Wright and Miller* § 4469, at 659, the full faith and credit statute mandates that a federal court presented with a prior state-court judgment must first look to the state's rules of preclusion. This District Court is left with the firm conviction that the implication to the contrary in *Klingman* was a mere oversight, and that the Seventh Circuit would recognize this and overrule this aspect of *Klingman* without hesitation.[9]

9. In cases in which a prior *federal* consent judgment is offered for preclusive effect in a subsequent federal action, the *Klingman* standard is, of course, wholly appropriate. *See In re Guy*, 101 B.R. 961, 974 (Bankr.N.D.Ind.1988) ("because the prior litigation here was brought in a federal court, the federal rule of collateral estoppel or issue preclusion would apply rather than the state['s]...."); *In re Nix*, 92 B.R. 164, 167 (Bankr.N.D.Tex.1988) ("Because the judgment to which collateral estoppel effect is sought to be given is a federal court judgment, federal law determines whether collateral estoppel effect would be appropriate.").

In this case, then, this District Court, being presented with a previous judgment from an Indiana court, must first look to Indiana law to determine whether the fraud issues of dischargeability under § 523(a)(2)(A) of the Code are precluded from being litigated. If it is determined that issue preclusion would apply under Indiana law, only then is it necessary to consider whether the exclusive federal jurisdiction over dischargeability somehow operates as a partial repeal by implication of the full faith and credit statute.

B. The Search for Indiana's Rule:

The next level of inquiry, then, must focus on what the rule is in Indiana for issue preclusion from agreed judgments. The general rule of issue preclusion in most jurisdictions is accurately reflected in the *Restatement (Second) of Judgments,* as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments* § 27 (1982).

A review of Indiana case law shows that this general rule is followed by the Indiana courts as well. For instance, in *Hardesty v. Bolerjack,* 441 N.E.2d 243, 245 (Ind.App. 1982), the court wrote, "Issue preclusion requires both identity of parties and mutuality of estoppel." Additionally, "issue preclusion operates only if the very fact or point in issue was determined in the prior litigation." *Id.*

█ Thus, as in most jurisdictions, the issue sought to be precluded must have been "actually litigated and determined" in order to be covered by this doctrine. *In re Moser,* 469 N.E.2d 762, 766 (Ind.App. 1984).[10] "Under this principle, ... only

matters actually litigated and determined, and not matters which might have been litigated and were not, are concluded by the former judgment." 8 I.L.E. *Judgment* § 371, at 408 (1980). Moreover, the party attempting to preclude litigation of an issue bears the burden of establishing all requisite elements. *Guyer v. Union Trust Co. of Indianapolis,* 55 Ind.App. 472, 104 N.E. 82, 88 (1912). *Accord,* 18 *Wright and Miller* § 4420, at 185.

The Indiana Court of Appeals, in expanding on the "actually litigated" requirement that is central to today's case, has written the following:

> If a judgment itself does not show what matters were decided, the pleadings, evidence, instructions, and verdict may be examined to determine that fact. Findings not essential to or material to the judgment do not effect [preclusion]. The estoppel of a judgment does not extend to matters not expressly adjudicated and which can be inferred only by argument, except were there are necessary and inevitable inferences, in the sense that the judgment could not have been rendered as it was without deciding such points. There is no estoppel where anything is left to conjecture as to what was necessarily involved and decided, as where the judgment, which might have been based upon one of several grounds, does not show upon which ground it was based.

*Peterson v. Culver Educational Foundation,* 402 N.E.2d 448, 461 (Ind.App.1980) (citations omitted). These comments in *Peterson* were applied in the claim preclusion setting, but are equally relevant to the "actually litigated" requirement of issue preclusion.

█ Thus, a review of Indiana precedent shows that the Indiana courts follow the same general rules for issue preclusion used in most jurisdictions, including the requirements that the issues be the same and that the issue was actually litigated in

---

10. It should be noted that issue preclusion is also known as "estoppel by verdict" in Indiana. *State Farm Mutual Automobile Ins. Co. v. Glasgow,* 478 N.E.2d 918, 922 (Ind.App.1985). This term was used by the Indiana Supreme Court in *Town of Flora v. Indiana Service Corp.,* 222 Ind. 253, 53 N.E.2d 161, 163 (1944), but has fallen out of grace in recent years as the courts opt for the issue preclusion or collateral estoppel labels.

the prior proceeding. The specific question in this case, though, is what Indiana's rule is for satisfying the "actually litigated" requirement by way of an agreed judgment.

The general rule announced in many jurisdictions is that in "most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but ·are *not* intended to preclude further litigation on any of the issues presented." 18 *Wright and Miller* § 4443, at 384–85 (emphasis added). "Thus consent judgments ordinarily support claim preclusion but not issue preclusion." *Id.*

In this respect the *Klingman* decision accurately summarizes the standard most commonly applied in most state and federal courts. As the court wrote, " '[Issue preclusion] does not apply to unlitigated issues underlying default or consent judgments ... *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions.'* " *Klingman*, 831 F.2d at 1296 (*quoting* 1B *Moore's Federal Practice* ¶ 0.444[1], at 794) (emphasis supplied by Seventh Circuit). Thus, " 'Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.' " *Klingman*, 831 F.2d at 1296 (*quoting* 18 *Wright and Miller* § 4443, at 382).

The drafters of the *Restatement (Second) of Judgments* also recognize this to be the rule in most jurisdictions, writing, "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." *Restatement (Second) Judgments* § 27, comment e. "The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention." *Id.* However, "such an intention should not readily be inferred." *Id.*

A review of decisions throughout the nation shows that this is, in fact, the general rule. *See, e.g., Goldman v. Wexler*, 122 Mich.App. 744, 333 N.W.2d 121, 123 (1983) (consent judgments are not to be given collateral estoppel effect); *Hentschel v.*

*Smith*, 278 Minn. 86, 153 N.W.2d 199, 205 (1967) (consent judgment does not have issue preclusion effect unless such an affirmative intention can be found; such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence). Indeed, an annotation on point shows that, with some exceptions, this is the majority rule. *See* Annot., *Modern Views of State Courts as to Whether Consent Judgment Is Entitled to Res Judicata or Collateral Estoppel Effect*, 91 A.L.R.3d 1170, 1183–91 (1979, and 1989 Supp.).

■ Because Indiana applies the general standards for issue preclusion used by most courts, one would expect that the Indiana Supreme Court, were it to decide the issue, would similarly follow the rule used by most courts in the consent judgment setting. That is, in Indiana it is likely that in order for something to be considered actually litigated in a consent judgment for purposes of issue preclusion, the consent judgment must clearly show that the parties intended such an effect.

Indeed, in a recent federal decision from the Northern District of Indiana, Judge Miller implicitly concluded that Indiana courts would follow the general rule that consent judgments do not preclude litigation of underlying issues unless the agreement specifically shows otherwise. In *United States v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172 (N.D.Ind. 1989), Judge Miller was faced with the issue of whether a consent decree should be given issue preclusion effect.

After noting that "Indiana's courts do not appear to have considered the preclusion effect of a consent decree in more than a century," *Id.* at 1199, Judge Miller cited to *Wright and Miller* for the proposition that "[i]n most circumstances, "consent agreements are intended to preclude further litigation only on the claim presented, not on any of the issues presented." *Environmental Waste*, 710 F.Supp. at 1199–1200. He then quoted comment "e" to § 27 of the *Restatement,* and concluded by citing to Professor Moore's treatise and

writing that "consent judgments are res judicata to causes of action contained therein, but should not be given conclusive effect under the doctrine of [issue preclusion] unless it was the parties specific intent to do so." *Environmental Waste,* 710 F.Supp. at 1200 (citing *Moore's Federal Practice* ¶ 0.443[3] ).

Despite such authority, the Stanleys, relying on the Indiana Court of Appeals' decision in *Hanover Logansport,* assert that in Indiana, issue preclusion will apply unless an issue was clearly reserved for future litigation. The Bankruptcy Court agreed with the Stanleys and ruled in their favor as a matter of law.

■■■ A close examination of *Hanover Logansport,* however, shows that the specific issue in that case was whether an alternative *claim* could be maintained by a plaintiff, notwithstanding the existence of a consent judgment that resolved one of the other claims in the case. The appeal did not directly involve whether an *issue* (i.e., were statements fraudulent) would be foreclosed because of the consent judgment. The distinction is crucial, for as noted previously, claim preclusion bars relitigation of all claims that were or *might have been* litigated, while issue preclusion bars issues that were *actually litigated.*

To demonstrate that *Hanover Logansport* is inapplicable in the issue preclusion setting, it is necessary to review that decision in detail. In that case a shopping center owner entered into a lease with a retailer in which the lessor agreed to make the premises available by a certain date. That date came and went, though, and the retailer sued for damages for lost profits or in the alternative specific performance. *Hanover Logansport,* 512 N.E.2d at 467.

Prior to trial, the lessor made an offer of judgment pursuant to Rule 68 of the Indiana Rules of Procedure, offering to make the premises available. The retailer made a "conditional acceptance" of the offer, and stated that the offer was "only accepted for purposes of mitigation of damages and not in settlement of damages arising to Plaintiff caused by Defendants' breach of contract." *Hanover Logansport,* 512 N.E.2d at 467.

The parties then filed an agreed entry reciting that the judgment as stipulated should be recorded. The retailer thereafter took possession of the premises, and the lessor asked the trial court to dismiss the action. The trial court denied the motion, and the lessor appealed. *Id.* at 468.

On appeal, the Indiana Court of Appeals framed the issue as follows: "Whether, by law, a plaintiff, who accepts an offer of judgment which conforms to one of the alternative prayers for relief contained in his complaint, may then seek additional damages arising from the same cause of action." *Id.* at 469. After outlining various cases throughout the country that discuss the effect of consent judgments, the Court of Appeals adopted the "consent-judgment-as-contract theory" and held that the "preclusive effect of a consent judgment must be measured by the intent of the parties." *Id.* at 471. This part of the decision is well reasoned and explained.

The court then went on to add, though, without any explanation or citation of authority, that "it must be clear that *both* parties have agreed to *reserve* an issue or claim." *Id.* (first emphasis in original, second added). *"And,"* the court added, "it must be precisely stated what issues or claims are being reserved." *Id.* (emphasis in original). The court then applied this standard and held that the reservation in the agreement did not sufficiently specify what "claim for damages" was being reserved. *Id.*

Although a legitimate argument could be made questioning the application of the standard,[11] the rule appears proper for

---

11. The court stated that to effectuate the new rule, "we hold that (1) the reservation must be incorporated into the offer of judgment itself and (2) it must be an inherent part of the original complaint." The court thus seemed to apply the mirror-image rule of contract law that the acceptance must specifically match the offer, and in so doing concentrated on the initial offer rather than the final agreed judgment. If such a mirror-image rule were strictly applied, though, it would seem that the parties never actually reached a meeting of the minds, for the

claim preclusion questions. Because claim preclusion applies to claims that were or *might have been* litigated, it makes sense to require consent judgments to specifically reserve claims if a party wants them to be the subject of future litigation.

■ However, the rule would *not* make sense in the narrower issue preclusion setting, for issue preclusion applies, in Indiana and elsewhere, only if issues were actually litigated; not if they might have been litigated. As the Seventh Circuit has written in explaining the difference between the two doctrines, unlike claim preclusion, "the object [of issue preclusion] is not to force the issue to be litigated in the earlier suit." *Grip–Pak*, 694 F.2d at 469.

The Indiana Court of Appeals failed to recognize this distinction between these two concepts in footnote nine of *Hanover Logansport*, where it wrote:

Here, we are dealing with the reservation of a claim for damages. However, there may be cases where a party desires to reserve an issue or another cause of action. The same rule would apply in those situations.

*Hanover Logansport*, 512 N.E.2d at 471 n. 9. This footnote, as well as other references in the opinion to issues and claims being precluded with equal force, see, e.g., *Id.* at 471, is not binding for several reasons.

First, as detailed above, the references to "issues" are pure *dicta*. The only question squarely presented in *Hanover Logansport* was whether an alternative *claim* for damages had been adequately reserved in a consent judgment; any discussion of issue preclusion was unnecessary to the decision and no doubt not refined by the fires of advocacy. *See Crawley*, 837 F.2d at 292–93 (dictum is part of opinion that a later court, even an inferior one, can reject if it is not persuasive).

Second, nowhere in the opinion did the Indiana Court of Appeals ever mention the specific concept of issue preclusion and the standards that it entails. Thus, the gratuitous and, at best, implicit inclusion of issue preclusion in the *Hanover Logansport* claim-reservation rule is unsupported by an adequate and persuasive explanation.

■ Third, it must be remembered that in applying Indiana law, this District Court is required to predict how the Indiana Supreme Court, which has not addressed the narrow question presented today, would rule. *See Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat. Ins.*, 750 F.2d 619, 624 (7th Cir.1984); *Heinhold v. Bishop Motor Exp., Inc.*, 660 F.Supp. 382, 385 (N.D.Ind.1987). In so doing, this Court must bear in mind that "its function is ... to choose the rule that it believes the state['s] [high] court, from all that is known about its methods, is likely to adopt in the future." *Peyton v. Benson*, 717 F.Supp. 1346, 1349 (S.D.Ind.1989) (J. Tinder).

■ Although "proper regard" must be given to rulings of the intermediate appellate courts, *Id.*, the ultimate goal is to simulate the State's high court. Thus, where it is readily apparent that an intermediate appellate decision would not be

acceptance did contain additional, material terms. Specifically, the "conditional acceptance" stated that the offer is only accepted for purposes of mitigation of damages and not in settlement of damages. Such a conditional acceptance would normally be treated as a counter-offer in the realm of contract law that the Court of Appeals applied.

In *Hanover Logansport*, however, the original offeror (the Lessor) seemed to accept the counteroffer by asking the clerk of the trial court to enter judgment " 'in accordance with the acceptance by plaintiff of defendants' offer of real estate....' " The parties then jointly filed an agreed entry stating that the judgment as stipulated should be recorded. Thus, under contract

law principles, a strong argument can be made that both parties agreed to the reservation of the damages claim. There may well be a compelling reason within the framework of Rule 68 for requiring the reservation to be in the original offer of judgment rather than the final agreed judgment, but no such reason is advanced in the opinion.

Moreover, the Court of Appeals statement that "it is not clear what claim for damages [the liquor store] was attempting to reserve" is puzzling. The Complaint filed by the liquor store clearly stated that it sought damages for lost profits. Because the liquor store was denied use of the premises for more than a year, it seems that the claim for damages sought to be reserved was readily apparent.

adopted by the Indiana Supreme Court, this Court should not give much if any weight to such a decision. *Williams*, 750 F.2d at 624. As the Seventh Circuit has made clear, intermediate appellate court cases are useful but not binding evidence of what the state's supreme court would do in similar case. *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986). *Accord, In re Air Crash Disaster Near Chicago, Illinois*, 771 F.2d 338, 339 (7th Cir. 1979). This is particularly true when the pronouncement of the intermediate appellate court is in the form of *dicta* rather than an actual holding.

Because the rule pronounced through *dicta* in *Hanover Logansport* runs contrary to the general principles of issue preclusion and would transform the "actually litigated" requirement to a "were or might have been litigated" standard, this District Court concludes that the Indiana Supreme Court would not follow footnote nine of *Hanover Logansport*. Rather, this Court is convinced that the Indiana Supreme Court, as it does in other settings and as it has done in general in the issue preclusion setting, would adopt the majority rule and hold that consent judgments do not have issue preclusion effect unless such intent is clearly reflected in the agreement itself.

### C. Application of Indiana's Rule:

The next step in the analysis is to apply Indiana's standard for issue preclusion to the record presented in this case. Of the requirements for issue preclusion, the two that matter in this case are: (1) whether the issue was actually litigated, and (2) whether the same issue was in question in the prior litigation. As shown below, neither requirement is met here, and the summary judgment order must be reversed.

### 1. The "actually litigated" requirement:

■ As demonstrated above, for issue preclusion purposes, Indiana would follow the majority rule and require that the parties clearly manifest their intent in the consent judgment to foreclose future litigation of specific issues. The Agreed Judgment entered into by the parties in the prior state court litigation does not, on its face, meet this standard.

Here it is important to recall that the Agreed Judgment merely stated that it was a judgment on the Complaint. Nowhere in the document did the parties state that any issues of fraud that might arise in the dischargeability context were forever foreclosed, as other litigants have done in similar settings. *Compare Klingman*, 831 F.2d at 196 (Seventh Circuit, in applying this same standard, found issue preclusion where the agreement stated that the debt owed "would not be dischargeable in any bankruptcy or similar proceeding and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof."). Nor did the parties recite or stipulate to any facts concerning fraud.

In short, although, as suggested by the Stanleys, the parties might well have foreseen bankruptcy and intended to foreclose future litigation of fraud issues, the record in this case does not allow that finding to be made as a matter of law at summary judgment. Foreseeability is ordinarily a factual question, *see, e.g., Prosser on Torts* § 45, at 320 (5th ed. 1984) (foreseeability in torts is generally for the jury), and it is possible that such an intention could be proven by extrinsic evidence in this case. *See generally* 18 *Wright and Miller* § 4420, at 189 (discussing use of extrinsic evidence in this setting). However, the very need to use extrinsic evidence shows the necessity of a resolution by a trier of fact.[12]

Moreover, the Agreed Judgment itself does not necessarily indicate that the same specific issues are expressly involved in both cases. The Stanleys sought $65,100 plus punitive damages and pre-judgment

---

12. It should be noted that the use of extrinsic evidence "to establish the issues actually decided in a prior action may strain the values of preclusion to the limit." 18 *Wright and Miller* § 4420 at 191. This is so because as much time could be spent on trying the issue preclusion factual question as the underlying fraud issues themselves.

interest under state securities laws in one count of the complaint, as well as $195,300 (inclusive of treble damages) and prejudgment interest and attorneys fees for common law fraud under another count. Yet, the Agreed Judgment merely provided for payment of $88,250, plus costs, without any explanation. The question arises, then, whether the Judgment depended upon any agreement that fraud had been committed. The Judgment does not explain if the amount recovered by the Stanleys is for pre-judgment interest, punitive damages, attorneys' fees, or treble damages, or all four.

The theory that agreeing to take judgment on the Complaint was equivalent to an admission of all the allegations pleaded is inconsistent with the actual result reached. Certainly the $88,250 does not include a complete recovery for the $65,100 sought for compensatory damages, punitive damages, attorneys' fees, prejudgment interest, and treble damages. This ambiguity, along with the fact that this amount of recovery apparently could have been supported by the mere admission that the securities registration requirements were violated, cast further doubt on the assertion that the fraud issue was actually litigated in state court.

In any event, these are matters to be considered, if at all, on remand, for there are genuine issues of fact as to whether the parties intended fraud questions to be forever barred. The agreement itself simply does not dispose of this matter by itself.

2. *Identity of issues:*

█ The identity of issues requirement "is difficult to satisfy in many dischargeability proceedings where the issue-preclusive effect of a prior state judgment is asserted." J. Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, (First Installment) 58 Am.Bankr. L.J. 349, 358 (1984). For a number of reasons, it seems impossible to satisfy in this case, particularly at the summary judgment stage and in light of the sparse record developed before the Bankruptcy Court.

█ First, the burdens of proof in the State and federal issues are different. In order to establish that a debt is nondischargeable under § 523(a)(2)(A), the creditor bears the burden of proving fraud by clear and convincing evidence. *In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir.1985); *In re Pochel*, 64 B.R. 82, 84 (Bankr.C.D.Ill. 1986). However, in the common-law fraud claim, the Stanleys do not contest that fraud could be proven by a preponderance of the evidence.

Thus, the issues are not the same because the state-court fraud claim entailed a lower burden of proof. *See, e.g.*, *Pochel*, 64 B.R. at 85 (no preclusive effect in discharge setting where different burden of proof involved in state-court issue); *In re Lichter*, 104 B.R. 521, 522 (Bankr.M.D.Ga. 1989) (same); *The Preclusive Effect of State Court Decisions in Bankruptcy*, 58 Am.Bankr.L.J. 349, at 362 ("If the standard of proof required to be met in dischargeability proceedings is more burdensome than the preponderance of the evidence standard used by the state court, preclusive effect cannot be given to any such state judgment.").

As Professors Wright and Miller have explained:

Issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required.

.    .    .    .    .

Differences in the burden of persuasion also might occur so that an adversary who initially carried a lower burden is confronted in later litigation with a higher burden. The abstract answer to this possibility seems clear: a party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard.

18 *Wright and Miller* § 4422, at 209, 214.

█ Although no decisions on point have been located from Indiana, this Dis-

trict Court is convinced that Indiana would also require the burdens of proof to be the same from one action to another. Certainly the Stanleys have not shown otherwise. Although a debtor is free to stipulate that he will be bound by an agreement concerning an issue such as fraud even though the burden of proof could be greater in future litigation, no such agreement is evident in this case. Accordingly, because the burden of proof is greater in the discharge setting, the issues are not the same. Thus, issue preclusion is not available.

Second, in "moving between issues of state and federal law ... it is necessary to take care to ensure that the same issue is involved under both bodies of law." 18 *Wright and Miller* § 4469, at 673. In the particular setting of this case, the substantive standards for Indiana common-law fraud and dischargeability fraud under the Code are not the same.

In Indiana, an action for fraud lies for any material misrepresentation of a past or existing fact when another party relies upon it to his detriment. *First Nat'l Bank of New Castle v. Acra*, 462 N.E.2d 1345, 1348 (Ind.App.1984). Thus, a misrepresentation about one's own financial condition could give rise to a fraud action in Indiana. Under § 523(a)(2)(A) of the Bankruptcy Code, however, a debt can still be discharged if the misrepresentation is "a statement respecting the debtor's or an insider's financial condition."

In this case, the Stanleys' state-court Complaint listed only three specific instances of fraud, as follows:

[1] failure to inform the Stanleys that Bicknell was the owner of 2,000 shares of stock at [a certain price] per share;

[2] failure to inform Stanleys of how many lots were to be purchased by [the corporation];

[3] and the failure to disclose to the Stanleys the total amount of financing to be raised by the sale of securities in [the corporation].

Complaint at ¶ 18.

In this light, it is seen that items (1) and (3) could well fall within the category of misrepresentations about the debtor's or an insider's financial condition. Moreover, items (2) and (3) could even be considered non-fraudulent if they do not constitute misrepresentations of past or present facts. It is well settled that a misrepresentation of or failure to disclose a future fact does not constitute fraud. *See, e.g., Wisconsin Engineering, Inc. v. Fisher*, 466 N.E.2d 745, 756 (Ind.App.1984) (fraud cannot be predicated upon promises to be performed in the future, and opinions or expressions of value ordinarily do not constitute fraud).

Thus, because different burdens of proof are involved, and because it is not clear that the mere allegations of the state-court complaint would entitle the Stanleys to a nondischargeability order based on fraud under § 523(a)(2), issue preclusion does not apply and summary judgment is unavailable.

## VI. *Conclusion:*

In determining and applying the appropriate Indiana standard of issue preclusion, it is seen that issue preclusion is inappropriate, at least at the summary judgment stage. Because issue preclusion is not invoked, and because the federal standard for issue preclusion is the same as Indiana's in this setting, it is thus unnecessary to proceed further to determine whether there is an exception to the full faith and credit statute based upon the Bankruptcy Court's exclusive jurisdiction over dischargeability proceedings.

This cause is thus remanded to the Bankruptcy Court for further proceedings consistent with this opinion. The summary judgment order was in error, but this does not mean that the debt to the Stanleys will necessarily be discharged. The Stanleys can still attempt to show fraud under the standards of § 523(a)(2)(A). Further litigation over issue preclusion appears futile unless the Stanleys can show, by extrinsic evidence, that the same issues were actually litigated. In light of the nature of the fraud allegations contained within the state-court Complaint, this appears impossible (as a matter of law) unless there is something else in the state-court record that removes the numerous legal obstacles

(particularly the differing burdens of proof) that are outlined in this opinion.

The Clerk of this Court is ordered to remand this cause to the Bankruptcy Court forthwith, and judgment shall be entered accordingly. Any future appeal to the District Court shall be referred to the undersigned.

IT IS SO ORDERED.