In re Leslie Raymond
GONSOR, Debtor.

Kirby OSWALD, Plaintiff,

v.

Leslie Raymond GONSOR, Defendant.

Bankruptcy No. 88–10040.
Adv. No. 88–1020.

United States Bankruptcy Court,
D. South Dakota.

Dec. 14, 1988.

Dale Wein, Aberdeen, S.D., for plaintiff.

William J. Pfeiffer, Aberdeen, S.D., for defendant.

## MEMORANDUM DECISION

IRVIN N. HOYT, Chief Judge.

Leslie Raymond Gonsor filed his Chapter 7 petition February 19, 1988. The only debt scheduled was an $11,050.00 liability owed to Kirby Oswald. The obligation arises out of a South Dakota state court judgment for $8,487.00 plus interest. The judgment followed a trial to the state court wherein Gonsor was adjudged liable for an assault and battery on Oswald.

According to the state court findings of fact the assault and battery occurred March 10, 1979 in an Aberdeen, South Dakota bar. The state court found that the Debtor "without cause or provocation and with great force and violence" twice kicked Oswald in the groin area and struck Oswald in the face with his fist. The kicks inflicted no physical injuries, but the punch broke Oswald's jaw. The state court memorandum decision and conclusions of law specify that the $8,487.00 in damages consists of $4,127.00 for medical bills, $360.00 for lost wages, $4,000.00 for pain, suffering "and all other general damages." Oswald's request for punitive damages was denied.

Gonsor has made no payments on the judgment. On May 25, 1988 Oswald filed an adversary complaint to have the debt determined nondischargeable under 11 U.S.C. § 523(a)(6), which excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity...."[1] This Memorandum Decision considers Oswald's subsequent motion for summary judgment.

---

**1.** Throughout the Bankruptcy Code the term "entity" includes a person. 11 U.S.C. § 101(14).

Oswald contends that he is entitled to judgment as a matter of law because the debtor is collaterally estopped from trying whether the debt arose out of a "willful and malicious injury." It is his position that the judgment received in the state court assault and battery trial prevents the Debtor from "relitigating" the matter in bankruptcy court. After the Debtor's brief is distilled to its basics, two arguments remain in resistance. Gonsor first argues that because the state court judge denied Oswald's punitive damages claim, he impliedly found the Debtor acted without the malice required by Section 523(a)(6). Secondly, Gonsor contends summary judgment is precluded because the state court did not determine if the assault and battery was "willful and malicious," and that these material facts remain in dispute.

In *Gregor v. Ertz (In re Ertz)*, 28 B.R. 1020 (1983), the Honorable Donald J. Porter, Judge of the United States District Court for the District of South Dakota, squarely addressed and rejected the debtor's first contention. Judge Porter gave two explanations why a denial of punitive damages under South Dakota state law was not equivalent to a finding of the absence of malice for Section 523(a)(6) purposes. First, the governing state statute provides that exemplary damages "may" be awarded where the defendant has acted with "oppression, fraud or malice." S.D. C.L. 21-3-2.[2] It does not *require* such an award in these cases. The refusal to award exemplary damages therefore does not necessarily imply that the state court found the defendant acted without malice. *See also, In re Pitner*, 696 F.2d 447 (6th Cir.1982).

Secondly, Judge Porter explained that "malice" as defined in the state exemplary damages statute is not synonymous with "malicious" as used in 11 U.S.C. § 523(a)(6). The South Dakota definition requires an "evil intent or specific wish to injure" not required under the meaning

prescribed by federal law. 28 B.R. at 1021. It is possible, therefore, for the Debtor's actions to meet the federal definition, but not satisfy the state meaning.

This court now turns to whether the state court assault and battery judgment collaterally estops the Debtor from litigating the discharge issue in this adversary proceeding. *Ertz* does not address this possibility. Rather than asserting that the issue was precluded by the collateral estoppel doctrine, the *Ertz* plaintiff presented evidence to the bankruptcy court to decide for itself whether the debtor acted in a "willful and malicious" manner, based upon the evidence in the state court record.

As Judge Peder K. Ecker of the Bankruptcy Court of this District recently explained:

The doctrine of collateral estoppel provides that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Collateral estoppel has been recognized and applied in cases involving a bankruptcy court's determination of the discharge of a debt. If, in the course of adjudicating a prior lawsuit, the court determined a factual issue using standards identical to those of Section 17 (now 11 U.S.C. § 523), then collateral estoppel would bar relitigation of those issues.

In general, collateral estoppel may preclude relitigation of a factual issue if:

1) the issues in both proceedings were identical,

2) the issue in the prior proceeding was actually litigated and actually decided,

3) there was a full and fair opportunity for litigation in the prior proceeding, and

2. The statute states the "jury" may make the punitive damages award. However, in matters tried to the court the trial court apparently is empowered to make such an award. *See Stugelmayer v. Ulmer*, 260 N.W.2d 236, 240 (S.D.1977).

It should also be noted that to date the South Dakota Legislature has not modified the damages statute interpreted in *Ertz* and applicable in the *Oswald v. Gonsor* state court action.

4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Federal Deposit Insurance Corp. v. Wright (In re Wright),* 87 B.R. 1011, 1016–17 (Bkrtcy. D.S.D.1988) (citations omitted).

The second and third elements appear obvious, and are not strongly contested. Debtor's brief contains the allegation that the state court action was not "aggressively pursued." The Debtor points to the delay between the day of the occurrence, March 10, 1979; the one day trial held March 28, 1984; the memorandum decision signed March 29, 1984, and filed May 23, 1984; and the entry of the judgment, findings and conclusions on April 2, 1986.[3] This court construes this objection as directed at the second and third estoppel elements. The delay complained of is not sufficient to cause more than a momentary pause before concluding those elements are present. Gonsor was represented by counsel at the state court trial, contested the complaint, and was allowed to present his version of the facts. From a deposition taken as part of this adversary proceeding it is clear that the Debtor's dissatisfaction with the state court decision is simply that the Judge did not believe his testimony.[4]

Only the first and fourth elements of the issue preclusion doctrine remain to be established. Thus collateral estoppel will bar the Debtor's effort to litigate dischargeability in this court if it was necessarily determined in the state court action that the assault and battery was "willful and malicious" within the meaning of Section 523(a)(6). This court must therefore compare the state law definition of assault and battery under which the Debtor was found liable, to the federal law definition of "willful and malicious" applicable in the assault and battery context. If the state court finding of liability required also finding that the assault and battery was "willful and malicious" as defined by federal law, the Debtor is collaterally estopped from contesting nondischargeability. *See, e.g.,*

*Wright,* 87 B.R. at 1017–20; *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988).

Neither the United States Supreme Court nor the Eighth Circuit Court of Appeals has interpreted the terms "willful and malicious" as used in Section 523(a)(6) in the context of an assault and battery judgment. The Eighth Circuit construed the terms in *Barclays American/Business Credit, Inc. v. Long (In re Long)* 774 F.2d 875, 881 (8th Cir.1985), but expressly limited that interpretation to complaints alleging nondischargeability based upon a debtor's transferral of property in breach of a security agreement. 774 F.2d at 881–82. In this district Judge Porter's *Ertz* Section 523(a)(6) "willful and malicious" interpretation therefore remains the proper standard in this context. As *Ertz* defines the standard, "a judgment premised upon an intentional act committed without justification which caused injury to a person is not dischargeable in bankruptcy." 28 B.R. at 1020. *See also, 3 Collier on Bankruptcy* para. 523.16[1] (15th Ed.1988); *Cassidy v. Minihan,* 794 F.2d 340, 343–44 (8th Cir. 1986) (describing congressional intent to "allow discharge of liability for injuries unless the debtor intentionally inflicted an injury."); *Pitner.*

Incorporating Judge Porter's definition, the Debtor is collaterally estopped from litigating the "willful and malicious" issue before this court if it necessarily was determined in the state court proceeding that he committed an intentional act, without justification, to the injury of Oswald.

To decide this issue it is necessary to determine the state law standard of assault and battery under which Gonsor was found liable. Since the matter was tried to the court, there are no jury instructions from which this court can extract the legal standards applied in the state court action. Nor does the state court's findings and conclusions set out the standards applied. It is necessary, therefore, to turn elsewhere to determine the South Dakota law then controlling. Of course, South Dakota recognizes assault and battery as intention-

---

**3.** The judgment, findings and conclusions were entered *nunc pro tunc* to April 20, 1984.

**4.** Under the Debtor's version of events, he struck Oswald in the face once in self-defense.

al torts. *See, e.g., Byre v. Wieczorek,* 88 S.D. 185, 217 N.W.2d 151 (1974); *Stene v. Hillgren,* 77 S.D. 165, 88 N.W.2d 109 (1958); *Ingalls v. Pflaum,* 72 S.D. 349, 34 N.W.2d 276 (1948). Surprisingly, however, neither South Dakota statutes, caselaw, or the South Dakota Civil Pattern Jury Instructions clearly set forth the standards applicable at the time of Gonsor's actions.[5]

In this case the absence of a clearly applicable state law standard does not prevent the court from concluding the *Ertz* criteria were necessarily litigated in the state court trial. The state court obviously was required to adjudicate that Gonsor's acts were "intentional," simply because Gonsor was adjudged liable for an intentional tort. The state court findings of fact make it equally evident that the parties adjudicated whether Gonsor's acts "caused injury to a person." The finding was also necessary to support the state court judgment, as some type of injury must be inflicted to incur liability for the assault and battery torts. *See* S.D.C.L. 20–9–1; Restatement (Second) of Torts §§ 7, 13 & 21 (1965). The final *Ertz* element, the requirement that the act be committed "without justification," was also necessary to the state court adjudication. If Gonsor had acted with justification, a defense negating liability would have existed. The state court rejected Gonsor's versions of events which would have established self-defense. The trial court instead found Gonsor acted "without cause."

In short, Gonsor could not have committed the assault and battery without inflicting a "willful and malicious" injury as defined in *Ertz.* The willful and malicious quality of Gonsor's acts was actually and necessarily adjudicated in a state forum which provided Gonsor with a full and fair

opportunity for hearing. He may not now require this Court to look behind the state court judgment and relitigate the nature of his acts.

This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J). This Memorandum Decision shall constitute the Court's conclusions of law. Findings of fact are not required on dispositions of motions for summary judgment. B.R. 7052(a). The Court shall enter summary judgment excepting the state court judgment from the Debtor's discharge.

---

5. *Ingalls* is the most recent case which defines the torts: "An assault is any willful and unlawful attempt or offer, with force or violence, to do a corporal hurt to another. A battery is any willful and unlawful use of force or violence upon the person of another." 34 N.W.2d at 276. This definition was taken verbatim from the definition contained in the criminal assault and battery statute then in effect. *See id.* Because the criminal statutes have been substantially expanded in subsequent criminal codes to include acts which would not constitute civil as-

sault or battery, it cannot be said with certainty that the *Ingalls* definition applied at the time of Gonsor's actions. *See* S.D.C.L. 22–18–1 and 22–18–1.1. It is worthy of note, however, that under the *Ingalls* formula, the *Ertz* criteria would be satisfied by the finding of liability in the state court proceeding. The same result occurs under the states' general tort liability statue, which provides that "[e]very person is responsible for injury to the person, property, or rights of another caused by his willful acts...." S.D.C.L. 20–9–1.