**In re John ROBINSON, IV, Debtor.**

**David HOLMES, Plaintiff,**

**v.**

**John ROBINSON, IV, Defendant.**

**Bankruptcy No. 91–90773.**
**Adv. No. 91–9103.**

United States Bankruptcy Court,
C.D. Illinois.

March 30, 1992.

**246**

Timothy O. Smith, Danville, Ill., for plaintiff.

Roger L. Prillaman, Urbana, Ill., for defendant.

Steve Miller, Danville, Ill., trustee.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

This matter having come before the Court for trial on a Complaint to determine the dischargeability of a debt; the Court, having heard sworn testimony and arguments of counsel and being otherwise advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

### Findings of Fact

During the evening hours of Friday, March 3, 1989, and the early morning hours of Saturday, March 4, 1989, the Plaintiff and Defendant were in attendance at a dress rehearsal for a show to be held at the Tilton Civic Center on March 4, 1989. The Defendant was present to practice with a band that was playing for various acts to be in the show, and the Plaintiff was present to rehearse in one of the acts. The Plaintiff and Defendant had known each other since they were children and considered themselves casual friends.

At about 2:00 A.M., on March 4, 1989, the Plaintiff remained at the Tilton Civic Center decorating tables and had come down from the balcony toward the front of the stage and stood watching the musicians on the stage take their equipment down. At that moment, the Plaintiff was grabbed from behind in a "bear hug" fashion and was lifted from the ground and twisted.

Upon being lifted, the Plaintiff felt a sharp pain in his left knee and yelled out, "My knee." At this point, the Plaintiff was let down to his feet and felt another foot between his leg. He grabbed that foot and sat down on it, and both the Plaintiff and Defendant fell to the floor. Up to this point in time, the Plaintiff was unaware of who had grabbed him, hearing nothing from behind except some giggling. The Plaintiff stated that he smelled alcohol on the breath of the individual behind him. It was only when the Plaintiff got up from the ground that he realized who had grabbed him. He identified that person as the Defendant. The Defendant admits it was he who had grabbed the Plaintiff, and Defendant stated that the reason for the grab was to "play around with the Plaintiff since it was his birthday."

The testimony of the parties indicates that both the Defendant and the Plaintiff had been drinking some beer late in the evening of March 3 and early in the morning on March 4, 1989. The uncontroverted testimony indicates that the Defendant had approximately three beers while the Plaintiff had two beers prior to the incident in question. The testimony given by both parties as to the incidents in question was very similar and there appear to be no facts that are seriously in dispute. There had been no arguments between the parties prior to the "bear hug," and it is apparent that the Defendant had wished the Plaintiff a happy birthday at about 12:30 A.M., prior to the "bear hug."

After getting up from the floor, the Plaintiff testified that he had pain in his left knee, he tried to walk this pain off, he was limping, and the knee ached at this point in time. The Plaintiff remained at the Civic Center for some time after the incident in question, but said nothing concerning the pain in his knee other than his initial statement when being lifted from the ground, "My knee." The testimony indicates that the Defendant and Plaintiff spoke prior to leaving the Civic Center in the early morning hours of March 4, 1989, but there was no conversation at that time concerning an injury to the Plaintiff's knee.

The first time that the Plaintiff discussed his knee with the Defendant was on the afternoon of March 4, 1989, at final rehearsal prior to the show on the evening of March 4, 1989. The Defendant testified that he did not even know that the Plaintiff was hurt until the following day, although he had noticed the Plaintiff limping around outside of the building in the early morning hours of March 4, 1989.

Sometime after March 4, 1989, the Plaintiff required medical attention for this knee, and, subsequently, on February 21, 1990, the Plaintiff filed a Complaint in State Court against the Defendant alleging one count of negligence and one count of battery. The Defendant filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code in May of 1991, and named the Plaintiff as a possible creditor in light of the State Court lawsuit. The filing of Defendant/Debtor's bankruptcy stayed the action in State Court, and the Plaintiff filed the instant action asking that this Court determine any debts or damages of the Plaintiff be determined as nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The parties agreed to bifurcate the proceedings and first hold a hearing concerning the question of dischargeability, reserving a hearing on damages pending the Court's decision on the issue of dischargeability.

A trial was held on March 10, 1992, at which time both the Plaintiff and Defendant testified. The Exhibits of the parties were admitted without objection, and no other testimony was taken from third parties.

### Conclusions of Law

■ Pursuant to 11 U.S.C. § 523(a)(6), a Court shall deny a discharge to a Debtor for a willful and malicious injury by the Debtor to another entity or to the property of another entity. The Plaintiff has the burden of proving by a preponderance of the evidence that the Defendant engaged in a (1) willful and malicious act (2) done without just cause or excuse (3) which leads to harm to the plaintiff. *In re Hallahan*, 78 B.R. 547, 550 (Bankr.C.D.Ill.1987).

■ While there is no universally accepted definition of the term "willful and malicious," this Court has concluded that willful and malicious conduct is the deliberate or intentional act of a Debtor with knowledge that the act will harm another. *See: In re Roemer*, 76 B.R. 126, 128 (Bank.So. Dist.Ill.1987); *In re Hallahan, supra*, at 550; and *In re Rubitschung*, 101 B.R. 28 (Bank.C.D.Ill.1988). The term "malicious" has been defined as a wrongful act done consciously and knowingly in the absence of just cause or excuse. *In re Bossard*, 74 B.R. 730, 736 (Bankr.N.D.N.Y.1987); *In re Condict*, 71 B.R. 485, 487 (Bankr.N.D.Ill. 1987). It need not be found that the Debtor acted with ill will or malevolent purpose toward the Plaintiff. *In re Hallahan, supra*, at 550.

■ In applying the law of § 523(a)(6) to the instant, undisputed facts, the Court must find that the Plaintiff has failed to meet his burden of proof. The conduct in question simply fails to rise to the level of willful and malicious conduct as defined in various case authorities cited herein. There has been no showing that the Defendant had any knowledge that the "bear hug" would cause the harm that resulted to the Plaintiff. The Plaintiff pointed out that the Defendant was a large man, at 220 lbs. and 6'4", and that he should have known that, in grabbing the Plaintiff, a smaller man, he could have caused an injury. The Court notes that the Defendant was a large man and it also notes that the Plaintiff was of a more average build; however, the difference in size between the two men does not sway the Court in its decision.

The Plaintiff relied heavily in his argument on *In re Johnson*, 109 B.R. 885 (Bankr.N.D.Ind.1989), and *dicta* in that case which stated that it is not necessary to find that the Debtor intended the specific harm, rather it is sufficient for Plaintiff to prove that the Debtor intended the act which caused the harm. This Court does not choose to follow the reasoning expressed in *dicta* in the *Johnson* decision, in that the facts in *Johnson* are clearly distinguishable from the facts in the present

case. *Johnson* involved a shooting and many of the cases cited in *Johnson,* for the proposition that liabilities arising from assaults and battery are generally considered as founded upon a willful and malicious injury, are cases that involved significantly more egregious conduct than is involved in the present case.

 The Plaintiff also heavily relies on the fact that it has established a technical battery as defined in the Illinois Criminal Code, at Ill.Rev.Stat., Ch. 38, para. 12–3. The Plaintiff argues that this fact, combined with the holding in *Johnson, supra,* mandates a finding of non-dischargeability of the debt in question. This Court disagrees with the position taken by the Plaintiff and finds that it is possible to find that there was a battery under Illinois law without finding the intent necessary for a finding of malice so as to establish the debt in question is non-dischargeable. *See: In re Martinez,* 110 B.R. 353 (Bankr.N.D.Ill. 1990). The Court, in *Martinez,* had no problem finding that the debt in that case was dischargeable under § 523(a)(6), even though it was apparent from the facts that Debtor, Martinez, had committed a battery upon the Plaintiff in that case. In comparing the facts with the present case with the facts in the *Martinez* case, this Court finds that the facts here are even less striking than the facts in *Martinez,* and, as such, the Court is unable to find that the Plaintiff proved a willful and malicious injury of the character necessary to find non-dischargeability pursuant to 11 U.S.C. § 523(a)(6).

## ORDER

For the reasons set forth in an Opinion entered on the 30th day of March 1992;

IT IS HEREBY ORDERED that:

A. The Complaint to determine dischargeability filed by Plaintiff on August 21, 1991, is *DENIED;* and,

B. The Court, having found in favor of Defendant on the issue of dischargeability, finds that the issue of damages is moot and that no further hearing on said issue is required.