In re Ervin STAGGS, Debtor.

James FORRESTER, Rachel L. Forrester, Plaintiffs,

v.

Ervin STAGGS, Defendant.

Bankruptcy No. 93–10443.
Adv. No. 93–1088.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

June 6, 1994.

David Peebles, Fort Wayne, IN, for debtor.

Donald Aikman, Fort Wayne, IN, for trustee.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

On July 3, 1986, the defendant/debtor, Ervin Staggs, was involved in a bar fight with the plaintiff, James Forrester, at the Red Apple Inn in Marion, Indiana. As a result of that altercation, the plaintiff filed a civil action on July 5, 1988, alleging that the defendant had committed battery against him. Defendant filed an answer of denial on April 3, 1989. Almost three years later, plaintiff filed a motion for summary judgment. The defendant did not appear at any of the hearings held as a result of the motion or otherwise contest it. On September 1, 1992, the Circuit Court found that "there [was] no genuine issue of material fact and that Defendant Ervin Staggs committed battery upon Plaintiff and that as a result of that battery Plaintiff suffered injuries." *Summary Judgment Decree*, No. 27C01–8811–CP–772 (Grant Circuit Ct. Sept. 1, 1992). A hearing to determine damages was scheduled for October 14, 1992. Once again the defendant failed to appear. Following this hearing, the state court entered a judgment in favor of the plaintiff and against the defen-

dant for $150,000.00 in compensatory damages and $450,000.00 in punitive damages. Defendant subsequently filed for relief under Chapter 7 of the United States Bankruptcy Code. By its complaint in this adversary proceeding, plaintiff seeks a determination that the obligation owed to him as a result of the state court judgment is nondischargeable, as a debt for a willful and malicious injury. 11 U.S.C. § 523(a)(6).

This matter is currently before the court on plaintiff's motion for summary judgment.[1] Plaintiff argues that the state court's judgment collaterally estops the defendant from disputing the dischargeability of the debt in question. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) (collateral estoppel applies to dischargeability proceedings under § 523(a)). Although defendant has conceded his liability to the plaintiff,[2] he argues that his conduct was not "willful and malicious" under § 523(a)(6) and that collateral estoppel does not apply.

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056(c). Thus, summary judgment is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

■ Initially, Rule 56 requires the moving party to inform the court of the basis of the motion and to identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence and credibility of witnesses. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

■ Pursuant to 11 U.S.C. § 523(a)(6), any debt attributable to a "willful and malicious injury by the debtor to another entity ..." is nondischargeable. The terms "willful" and "malicious" are separate elements, both of which must be satisfied. *In re Kimzey,* 761 F.2d 421, 424 (7th Cir.1985); *In re Adams,* 147 B.R. 407, 412 (Bankr.W.D.Mich. 1992); *In re Walsh,* 143 B.R. 691, 695 (Bankr.N.D.Ohio 1992); *In re Muhammad,* 135 B.R. 294, 298 (Bankr.N.D.Ill.1991). It is plaintiff's burden to show by a preponderance of the evidence that these elements have been met. *Grogan,* 498 U.S. at 284, 111 S.Ct. at 661. Exceptions to dischargeability are construed strictly against the creditor and in favor of the debtor. *Matter of Scarlata,* 979 F.2d 521, 524 (7th Cir.1992); *Matter of Zarzynski,* 771 F.2d 304, 306 (7th Cir. 1985); *Fidelity Financial Services, Inc. v. Cornell–Cooley,* 158 B.R. 128, 135 (D.S.D.Ind.1993).

■ As used in § 523(a)(6), "willful" is universally equated with "intentional." *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1264 (11th Cir.1988). Thus, a plaintiff must simply prove that the obligation in question arises out of a debtor's intentional act. "The intent required is intent to do the

---

1. Also before the court is defendant's motion for partial summary judgment, in which defendant contends that Rachel Forrester should be dismissed as a party plaintiff. While not conceding the merits plaintiff states that "no separate judgment of damages will be sought in the matter" as

to her. Accordingly, the court will dismiss Rachel Forrester as a party plaintiff.

2. Defendant is currently appealing the amount of damages awarded by the state court.

act at issue, not intent to injure the victim." *In re Britton,* 950 F.2d 602, 605 (9th Cir. 1991). *See also In re Littleton,* 942 F.2d 551, 554 (9th Cir.1991); *In re Mills,* 111 B.R. 186, 194 (Bankr.N.D.Ind.1988).

While the meaning of the term "malicious" has not been resolved by the Seventh Circuit, *Matter of Scarlata,* 979 F.2d 521, 526 (7th Cir.1992), a generally accepted definition is that it "is a wrongful act done without just cause or excuse, 'which necessarily produces harm.'" *In re Kemmerer,* 156 B.R. 806, 808 (Bankr.S.D.Ind.1993) (quoting *In re Cecchini,* 780 F.2d 1440, 1442–43 (9th Cir.1986) (emphasis deleted)). *Accord Britton,* 950 F.2d at 605; *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245 (5th Cir.1983). It does not require ill will, spite, or personal hatred. *In re Seals,* 110 B.R. 331, 333 (D.M.D.Tenn.1989); *In re Robinson,* 140 B.R. 245, 247 (Bankr.C.D.Ill.1992).

The analysis of whether or not a prior judgment precludes the subsequent litigation of a particular issue must proceed with a degree of cautious deliberation. There are both state and federal rules governing collateral estoppel. While these rules are similar, they are not identical and their differences may be outcome determinative. *See e.g. Bicknell v. Stanley,* 118 B.R. 652 (D.S.D.Ind.1990). As a result, it is important to begin the analysis by choosing the correct rule. A further complication is that there are two different situations where collateral estoppel may come into play. The parties to the subsequent proceeding may or may not be the same as the parties to the litigation which resulted in the judgment that is claimed to operate as an estoppel. Here again, although the standards are similar, they have slight differences. The primary difference is that, where the parties are not identical, whether or not collateral estoppel applies involves the consideration of a number of equitable circumstances which do not enter the equation where the parties are identical. *See* Restatement (Second) of Judgments § 29. Thus, one cannot simply pull a reported decision off the shelf because it happens to discuss collateral estoppel and advance an argument based upon it. Before

doing so, one must ensure that it utilizes the correct rule (state or federal) and the appropriate standard (identical or not identical parties).

A state court judgment is entitled to full faith and credit in bankruptcy proceedings. 28 U.S.C. § 1738; *Matter of Bulic,* 997 F.2d 299, 304 (7th Cir.1993). Thus, the bankruptcy court must give a state court judgment the same preclusive effect that a state court would give to it. *Bulic,* 997 F.2d at 304 n. 6; *Butler v. City of North Little Rock, Ark.,* 980 F.2d 501, 503 (8th Cir.1992); *In re Guy,* 101 B.R. 961, 974 (Bankr.N.D.Ind.1988). Whether a state court judgment precludes the litigation of an issue, therefore, initially depends on state law. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Jones v. City of Alton, Ill.,* 757 F.2d 878, 883 (7th Cir.1985); *In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir.1993); *In re Nourbakhsh,* 162 B.R. 841, 843 (9th Cir. BAP 1994); *Bicknell v. Stanley,* 118 B.R. 652, 660–61 (D.S.D.Ind.1990); *In re Holland,* 155 B.R. 745, 747 (Bankr.S.D.Ind.1992). If state law would preclude litigation on an issue that arises in connection with a federal claim, then the court must also consider whether Congress has expressly or implicitly excepted that claim from § 1738. *Marrese,* 470 U.S. at 383, 105 S.Ct. at 1333; *Cook Co. v. MidCon Corp.,* 773 F.2d 892, 898 (7th Cir. 1985); *Bicknell,* 118 B.R. at 660.

The general rule of issue preclusion in most jurisdictions is accurately reflected in the Restatement (Second) of Judgments, as follows:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.... A review of Indiana case law shows that this general rule is followed by the Indiana courts as well. *Bulic,* 997 F.2d at 304 n. 6 (quoting *Bicknell,* 118 B.R. at 644 (citing *Hardesty v. Bolerjack,* 441 N.E.2d 243, 245 (Ind.App. 1982))).

The Indiana Supreme Court's more recent pronouncement on the issue indicates that this statement of the general rule remains unchanged.[3]

> Generally, collateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit. In that situation, the first adjudication will be held conclusive even if the second is on a different claim. *Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1037 (Ind.1993) (citing *Sullivan v. American Casualty Co.*, 605 N.E.2d 134, 137 (Ind.1992)). *See also Town of Flora v. Indiana Service Corp.*, 222 Ind. 253, 53 N.E.2d 161, 163 (1944).

Thus, Indiana has essentially adopted and continues to follow the Restatement's traditional principles on collateral estoppel.

To establish collateral estoppel, plaintiff must show:

1) that the issue in the current action is identical to that in the first action;

2) that the issue was actually litigated;

3) that the resolution or determination of the issue was necessary to the judgment in the first action; and

4) that a final judgment determined or resolved the issue in the prior action.

Defendant contends that, under this standard, it is not collaterally estopped from disputing that its actions were willful and malicious. While it acknowledges that a final judgment awarding both compensatory and punitive damages for defendant's conduct exists, it argues that the other three elements have not been satisfied.

■■■■ The court can quickly dispose of defendant's assertions that the issues determined in the first action were not identical to those presented here. In the state court action, plaintiff sought to recover damages for defendant's alleged battery. The court found that a battery occurred, as a result of which plaintiff was injured. In Indiana, battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the [victim] to suffer such a contact". *Fields v. Cummins Employees Federal Credit Union*, 540 N.E.2d 631, 640 (Ind.App.1989) (quoting W. Keeton, *Prosser and Keeton on The Law of Tort*, § 9 (5th ed. 1984)). The ultimate finding concerning whether a battery occurred encompassed both the issues of maliciousness (a wrongful act, without just cause or excuse which necessarily produces harm) and willfulness (an intentional act) under § 523(a)(6). *Accord In re Pokorny*, 143 B.R. 179, 182 (Bankr.N.D.Ill.1992) (debts based upon battery are generally nondischargeable under § 523(a)(6)); *In re Nunez*, 95 B.R. 566, 569 (Bankr.N.D.Ill.1988); *In re Gonsor*, 95 B.R. 123, 126 (Bankr.D.S.D.1988). *See also In re Miera*, 926 F.2d 741, 744 (8th Cir.1991). Indeed, a leading bankruptcy treatise indicates that "liabilities arising from assault and battery are generally considered as founded upon a willful and malicious injury and therefore within the exception" to discharge under § 523(a)(6). 3 *Collier on Bankruptcy*, ¶ 523.16, at 523–120 (L. King, 15th ed.) (citations omitted). *See also In re Johnson*, 109 B.R. 885, 891 (Bankr.N.D.Ind. 1989). *But see Robinson*, 140 B.R. at 248; *In re Martinez*, 110 B.R. 353, 355 (Bankr. N.D.Ill.1990) (an act which constitutes a battery under Illinois law does not necessarily mandate a finding of malice). Defendant's argument to the contrary is largely based upon the proposition, which the court rejects, that malicious, as used in § 523(a)(6), requires a higher degree of culpability.[4]

---

**3.** The parties rely on *Tofany* to identify the requisite elements of collateral estoppel in Indiana. They fail, however, to identify the difference between that case and the situation here. In *Tofany*, the Indiana Supreme Court was concerned with the requirement of mutuality and the application of the doctrine of collateral estoppel where the parties to the subsequent proceeding were not the same as in the first. Nonetheless, if a particular decision would not operate as an estoppel between the same parties, it will not be given that effect where the parties are not identical. Restatement (Second) of Judgments § 29. Thus, notwithstanding the different parties, *Tofany* represents Indiana's most recent statement of the requirements for the general rule concerning issue preclusion.

**4.** Beyond finding that defendant committed battery, the state court also assessed punitive damages against him. In Indiana, proof that a battery occurred is not, by itself, enough to award punitive damages. Instead,

The issues in the state court action, concerning whether or not defendant committed battery, are identical to the issues raised by a § 523(a)(6) action. The resolution of those issues was clearly necessary to the court's decision and the final judgment eventually entered against the defendant. Thus, the only remaining question is whether the issue of malice was *actually litigated.* The defendant argues that this requirement has not been met because the state court's decision was made as the result of an unopposed motion for summary judgment.

"The requirement that an issue be 'actually litigated' does not necessitate a full-blown trial or opinion on the matter." *Lehman's Inc. of Anderson v. Hittle,* 163 B.R. 814, 818 (D.S.D.Ind.1994). According to the Restatement, "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated...." Restatement (Second) of Judgments § 27 cmt. d. When measured by this standard, the issue concerning the nature of defendant's conduct was actually litigated. Whether or not defendant committed battery was put in issue by the pleadings, when the defendant filed an answer denying the allegation. That issue was submitted to the court for a determination by plaintiff's motion for summary judgment and the materials filed in support thereof. Based upon the undisputed facts before it, the court determined that a battery occurred and eventually entered judgment against the defendant. Given this, it is not surprising to find that issues decided on summary judgment are generally considered to have been actually litigated and are given preclusive effect. *Exhibitor's Poster Exch. v. National Screen Serv. Corp.,* 421 F.2d 1313, 1319 (5th Cir.1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971); *Lehman's, Inc.,* 163 B.R. at 818; *Kamilche Co. v. United States,* 809 F.Supp. 763, 767 (N.D.Cal.1992); *Creed Taylor, Inc. v. CBS, Inc.,* 718 F.Supp. 1171, 1177 (S.D.N.Y.1989).

Defendant recognizes the general principle that gives preclusive effect to decisions made in connection with motions for summary judgment, but argues that it should not apply here because it presupposes that both parties actively participated in the proceedings on the motion, by filing affidavits, producing evidence and making arguments. Defendant contends that his lack of participation in the state court proceeding, from the time his second attorney withdrew and specifically his failure to appear at the hearings on the summary judgment motion and regarding damages, means that the issue concerning the nature of his conduct was never actually litigated.[5]

In the state court action, defendant was initially represented by J. Phillip Cassidy. Cassidy's motion to withdraw was granted on December 28, 1990. He subsequently re-entered his appearance on January 16, 1990 but again withdrew it on February 21, 1990. On June 8, 1990, David Magley entered an appearance on behalf of the defendant. His

---

[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing....' *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind. 1993) (quoting *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137–38 (Ind.1988)). Since battery is an intentional tort, the award of punitive damages was necessarily based upon something other than gross negligence or oppressiveness. Indeed, the state court specifically found that "Defendant Ervin Staggs' conduct was intentional, malicious and violent...." *Judgment,* No. 27C01–8811–CP–772 (Grant Circuit Court, Oct. 14, 1992). Thus, although it is the state court's finding of September 1, 1992 that precludes the defendant from litigating the

issue, the subsequent determination that punitive damages were appropriate reinforces the conclusion that the prior judgment encompassed the same issues of willfulness and maliciousness that are essential under § 523(a)(6). *See also In re Horowitz,* 103 B.R. 786, 789 (Bankr.N.D.Miss. 1989); *In re Peoni,* 67 B.R. 288, 290 (Bankr. S.D.Ind.1986).

5. Defendant buttresses this argument by producing affidavits and other evidence which, if presented to the state court, might have led it to deny the motion, concluding that there was a genuine issue of material fact. This court, however, must make its decision based upon what the state court actually determined, rather than what it might have determined had the question been submitted differently.

motion to withdraw was granted on November 15, 1991.

Almost six months later, on May 8, 1992, plaintiff filed his motion for summary judgment. The defendant did not appear at the hearings or respond to the motion for summary judgment in any way. At the first hearing on the motion the court ordered the hearing re-set to September 1, 1992 and a new notice sent to defendant, because the court thought it was likely that the defendant had not received notice of the hearing. Defendant had actual notice of the September 1, 1992 hearing but did not attend. The court granted plaintiff's motion and entered summary judgment against the defendant on the issue of liability. A third hearing was scheduled for October 14, 1992, where the court received evidence concerning plaintiff's damages. Again, the defendant did not attend. At this hearing, the plaintiff testified as to both the extent of his damages and the nature of the defendant's conduct. The trial court subsequently awarded the plaintiff $150,000.00 in actual damages and $450,000.00 in punitive damages. The entry of the judgment on damages finally induced the defendant to obtain counsel and make another appearance before the court on November 12, 1992. After his motion to correct errors was denied, he appealed the state court's decision and filed for bankruptcy.

■■■ The general rule concerning whether an issue has been actually litigated recognizes that "in the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement (Second) of Judgments § 27 cmt. e. Defendant argues that the same policy concerns that mandate that a default judgment not be given preclusive effect apply here as well. Because he did not oppose the motion, defendant contends that the one sided presentation to the state court is tantamount to a default judgment and should not be given any preclusive effect. Plaintiff protests, arguing that the defendant's failure to participate in the state court proceeding, when he had a full and fair opportunity to do so, should not allow the defendant to get a second opportunity to litigate the same issues in the bankruptcy court.

Some courts are reluctant to give preclusive effect to decisions rendered after a one-sided presentation. They conclude that the losing party's failure to actively oppose the issue, by presenting evidence or arguments to the contrary, leads to the conclusion that the issue was not actually litigated and is more appropriately characterized as a default. *See e.g., In re Holland,* 155 B.R. 745 (Bankr.S.D.Ind.1992); *In re Dvorak,* 118 B.R. 619 (Bankr.N.D.Ill.1989).[6] The question that confronts this court is whether or not Indiana would follow this line of reasoning.

■■■ It is clear that the Indiana courts will not give collateral estoppel effect to a default judgment entered against a defendant who never appeared in the action. *Porter's South Shore Cleaners, Inc. v. State,* 512 N.E.2d 895, 898 (Ind.Tax 1987). It is equally clear that a judgment entered after a

---

**6.** The most pristine example of a judgment entered by a default is where the defendant fails to respond to a complaint against it, resulting in its being deemed to have admitted the allegations of fact contained in plaintiff's complaint. An issue determined under these circumstances is not actually litigated, resulting in the principle that a judgment entered by default is not actually litigated. This principle is then seized upon by lawyers and judges who use it as a point of embarkation for the often laborious journey of trying to determine what is or is not a default judgment for the purpose of collateral estoppel. Yet, there is nothing magical about a default judgment that should give it any special place in the application of the rules governing collateral estoppel. Those who try to find special or unique characteristics in default judgments have overlooked the reasons behind the principle

which says that such issues are not actually litigated.

Issues determined by default are not actually litigated because no issue was ever raised by the pleadings. While the complaint alleged facts that might have been litigated, because those facts were never contested no issues were created and, thus, there was never anything to litigate. Because the defendant never disputed the plaintiff's allegations, no factual issue was ever created which could then be submitted to the court for its determination. The refusal to give preclusive effect to default judgments, thus, has nothing to do with the vigor of one's advocacy or the quality of the presentation to the prior court. Rather, at its core, it is based upon the fact that at no time during the litigation was the court ever presented with a disputed issue.

full blown trial on the merits will preclude subsequent litigation between the parties over the same issues. Between these two extremes, however, there is a broad middle ground in which the court's judgment is entered after something more than a default but less than a full adversarial presentation. Unfortunately, the Indiana courts have not addressed the issue of collateral estoppel in the twilight land between these two extremes. This court must, therefore, attempt to determine what rule they would apply to this type of situation. To do so the court must first determine whether the decisions of the state courts demonstrate a "discernable doctrinal trend." *Bowen v. United States,* 570 F.2d 1311, 1322 (7th Cir.1978). In the absence of such a trend, the court is to "follow the rule that appears best to effectuate the policies that underlie the rule." *Id.*

The court has no reason to believe that Indiana would adopt a rule that refuses to give preclusive effect to a decision merely because it was made after a one-sided presentation. Persuasive commentary counsels against it.

> The problem of issue preclusion after a one-sided trial also arises after a defendant answers on the merits and then fails to appear for trial or to offer evidence on particular issues. It is not uncommon for lawyers to describe such events loosely as defaults. Conceptually, however, trial is required to prove any matters that have not been admitted in the pleadings. It is far from clear that issue preclusion should be denied simply because the resulting trial was one-sided. In other settings, it may be proper to apply preclusion after a failure to offer any evidence on an issue, and similar arguments may be made that a plaintiff who has been forced to litigate the issue should reap the fruits of preclusion. Most harsh results could be avoided by particularly sympathetic application of the rules that issue preclusion can be defeated if there was no sufficient incentive to litigate or if the later litigation was not reasonably foreseeable. 18 *Wright, Miller & Cooper, Federal Practice and Procedure* § 4442 at 376–77.

■ The prevailing trend in Indiana is to expand rather than diminish the availability of collateral estoppel. *See Tofany v. NBS Imaging Systems, Inc.,* 616 N.E.2d 1034 (Ind.1993) (collateral estoppel may be used offensively by a person not a party to prior litigation to prevent defendant from relitigating an issue); *Sullivan v. American Casualty Co.,* 605 N.E.2d 134 (Ind.1992) (mutuality of estoppel and identity of parties no longer required; collateral estoppel may be used defensively by a person not a party to prior litigation to prevent plaintiff from relitigating an issue); *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390 (Ind. 1988) (administrative decision may operate as estoppel); *Brougher Agency v. United Home Life Ins.,* 622 N.E.2d 1013 (Ind.App.1993) (arbitrator's decision may operate as estoppel). *See also Hanover Logansport, Inc. v. Robert C. Anderson, Inc.,* 512 N.E.2d 465 (Ind.App.1987) (consent judgment as estoppel). To refuse, under the rubric of not actually litigated, to give preclusive effect to a decision rendered after a one-sided trial would be contrary to the prevailing trend in Indiana. It would diminish, rather than expand, the availability of collateral estoppel.

■ Unlike a true default situation, where the defendant is deemed to have admitted whatever allegations of fact are properly pled in the plaintiff's complaint, a decision entered after an unopposed motion for summary judgment or a one-sided trial requires the victor to actually be able to produce evidence, of one type or another, and not just allegations, to support the court's decision.

> [W]here an issue of fact is pending between the parties there can be no judgment on default even though the defendant is absent at the time fixed for trial. Under such circumstances however the court may proceed to hear the plaintiff's evidence in the same manner as though the defendant were present and, if a prima facie case is established, may render appropriate judgment. *Aetna Securities Co. v. Sickels* [120 Ind.App. 300], 88 N.E.2d 789, 792–93 (1949) (en banc).

Indiana considers decisions made under these circumstances to be judgments on the

merits, rather than default judgments. *Ed Marton Ford Co. v. Martin,* 173 Ind.App. 428, 363 N.E.2d 1292, 1294 n. 1 (1977). Granted, because of the lack of opposition, the quality of this evidence may sometimes be lacking, but collateral estoppel involves an examination of what issues were actually and necessarily determined, not what was presented to support that determination. If the court embarks upon an examination of the quality of either the evidence offered or the presentation made to the prior court, this comes perilously close to a prohibited "re-examination of the substantive determinations in the state court action." *Lehman's Inc.,* 163 B.R. at 818 n. 3.

■■■ "The policy underlying the doctrine [of collateral estoppel] is that one fair opportunity to litigate an issue is enough." *Gilldorn Savings Ass'n v. Commerce Savings Ass'n,* 804 F.2d 390, 392 (7th Cir.1986) (citing *Bowen v. United States,* 570 F.2d 1311, 1322 (7th Cir.1978)). The focus of the court's attention should be upon the *opportunity* to litigate the issue, "not whether a litigant put in his best case on the point during the first go-around...." *Kathios v. General Motors Corp.,* 862 F.2d 944, 946 (1st Cir.1988). Placing the focus of the inquiry upon the opportunity to litigate, rather than upon the quality of the evidence or presentation, furthers one of the policies of collateral estoppel—judicial finality—by protecting litigants from the harassment of repeatedly litigating the same issue with the same party. *State v. Speidel,* 181 Ind.App. 448, 392 N.E.2d 1172, 1179 (1979). The other policies that are served through the doctrine of collateral estoppel:

(a) preventing unnecessary litigation, *Tofany,* 616 N.E.2d at 1038; *State v. Speidel,* 392 N.E.2d at 1079, and

(b) promoting the consistency of decisions, *Tofany,* 616 N.E.2d at 1038; *Illinois Cent. Gulf R.R. v. Parks,* 181 Ind.App. 141, 390 N.E.2d 1078, 1081 (1979),

are also better served by giving preclusive effect to decisions made following one-sided trials.

■■■ The court concludes that the Indiana courts would not adopt a rule that refuses to give preclusive effect to a decision made after a one-sided trial based upon the proposition that an issue determined in that fashion was not actually litigated. Instead, they would recognize that the actually litigated requirement of collateral estoppel is satisfied whenever, after a party has appeared in the action and contested an issue, that issue is presented to the court for a decision based upon the facts or evidence put before it. The determination made by the Grant Circuit Court clearly fulfills this standard.

■■■ Even though all of the requirements for collateral estoppel may be fully satisfied, the doctrine is not without its exceptions.[7] *See* Restatement (Second) of Judgments § 28. Although the Indiana courts have not directly confronted the question of whether or not they would recognize any of the Restatement's exceptions where the question arises between the same parties, there is every reason to believe that they would do so. The court reaches this conclusion because the evolution of the doctrine in this state is, by and large, consistent with the Restatement, both as to the requirements of the general rule, Restatement (Second) of Judgments § 27, and the ability of a non-party to take advantage of a prior judgment, Restatement (Second) of Judgements § 29. As a result, the court concludes that, when confronted with the question, the Indiana Supreme Court would adopt and apply the "exceptions to the general rule of issue preclusion" as set out in § 28 of the Restatement.

Section 28 of the Restatement reads:

Although an issue is actually litigated and determined by a valid and final judgment,

7. Defendant tries to bring himself within an exception by advancing a number of equitable arguments to the effect that it would somehow be unfair to use the state court's judgment to prevent him from litigating the issue of dischargeability. Many of these equitable considerations are not appropriate here, where the issue arises between the same parties. Most of them have been developed to apply where the traditional requirements of mutuality of estoppel and identity of parties have been abandoned, so that a stranger to the prior litigation may use the decision as a basis for invoking collateral estoppel. *See State v. Speidel,* 181 Ind.App. 448, 392 N.E.2d 1172, 1178–79 (1979); Restatement (Second) of Judgments § 29.

and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded or other special circumstances, as a result of the conduct of his adversary, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action. Restatement (Second) of Judgments § 28.

■ Of these five exceptions, the first four are clearly inapplicable. Judicial review of the Circuit Court's decision was available and, indeed, the defendant is in the process of appealing the award of damages. The issue before this court is one of fact rather than law. There is no meaningful difference between the quality or the extensiveness of the procedures followed by the Indiana state courts and those available here. Admittedly, this court has the exclusive jurisdiction to determine dischargeability under § 523(a)(6). 11 U.S.C. § 523(c)(1). Yet, whether or not this will prevent the application of the general rule is to "be resolved in the light of the legislative purpose in vesting exclusive jurisdiction in a particular court." Restatement (Second) of Judgments § 28 cmt. e. Since the state court clearly had jurisdiction to determine the issue of battery and the Supreme Court has specifically sanctioned the use of collateral estoppel in dischargeability proceedings, *Grogan*, 498 U.S. at 284 n. 11, 111 S.Ct. at 658 n. 11, this exception does not apply. Since plaintiff need only prove nondischargeability by a preponderance of the evidence, *id.*, exception four does not apply either.

The only exceptions to the general rule concerning issue preclusion that might apply to this situation are 5(b) (foreseeability) and 5(c) (opportunity and incentive to litigate).[8] The comment concerning this portion of § 28 cautions that

such instances must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one. Restatement (Second) of Judgments § 28 cmt. g.

■ Given the standards governing dischargeability under § 523(a)(6) and the proof needed to establish battery under Indiana law, it was clearly foreseeable that a finding of battery by the state court would affect debtor's ability to discharge any resulting obligation to the plaintiff. *See Cohen v. Bucci*, 905 F.2d 1111, 1113 (7th Cir.1990). This, in itself, is a sufficient incentive to litigate. *Id.* Furthermore, since the debt which may be excepted from discharge is the debt as it exists under state law, *Grogan*, 498 U.S. at 283, 111 S.Ct. at 657, defendant's

---

**8.** There is no suggestion that issue preclusion in this case will have any adverse impact upon the public interest or the interests of non-parties. Restatement (Second) of Judgments § 28(5)(a).

financial exposure and the incentives it produces are no different in state court from what they would be in bankruptcy.

■ There is no compelling need to redetermine what occurred at the Red Apple Inn on July 3, 1986. Ultimately, the best that can be said of defendant's equitable arguments is that he may not have accurately perceived the degree of exposure he faced in state court and that the state court's decision is in error. These things may or may not be true, but they do not change the fact that defendant had a full and fair *opportunity* to litigate the issue of battery[9] and failed to take advantage of it. To the extent defendant may not have appreciated the full extent of his potential exposure, that is a direct result of his failure to participate in the action for a year after his last attorney withdrew rather than any concealment by his adversary. *See* Restatement (Second) of Judgments § 28 cmt. j. Whether or not the court's award of damages was in error is a matter for the Indiana Court of Appeals to decide.[10] Even if it is "patently erroneous" this court cannot refuse to give it preclusive effect. Restatement (Second) of Judgments § 28 cmt. j.

■ The court concludes that the Indiana Courts would give the state court judgment preclusive effect. The collateral estoppel inquiry is not ended, however, by this determination. The court must also ask whether Congress implicitly or explicitly meant for a § 523(a)(6) determination to be excepted from § 1738's mandate to give a state court judgment "full faith and credit."

Nothing in the statute or the legislature history indicates that bankruptcy generally or dischargeability specifically was to be excepted from the mandate of § 1738. Indeed, the Supreme Court in *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) held that a state court judgment was entitled to be given collateral estoppel effect in a § 523(a) determination. While the Supreme Court did not specifically address the effect of § 1738, its clear assumption is that an exception did not exist. This court can see no reason to disagree. *See also In re Nourbakhsh,* 162 B.R. 841, 845 (9th Cir. BAP 1994); *In re Bursack,* 163 B.R. 302, 304 (Bankr.M.D.Tenn.1994) (no exception exists).

The court's decision to give preclusive effect to the prior determination is consistent with that of other courts that have faced the identical issue in similar circumstances. The bankruptcy court in *In re Wien,* 155 B.R. 479 (Bankr.N.D.Ill.1993) was confronted with the question of whether an uncontested summary judgment in a previous action should be given a preclusive effect. While applying the federal rule concerning collateral estoppel, its analysis was based upon the same general principles that Indiana follows and applies with equal force here.

The plaintiff in *Wien* charged the defendant with a violation of RICO, 18 U.S.C. § 1962(a), and conversion. The plaintiff moved for summary judgment and, when after having been granted several continuances, the defendant failed to respond, the district court deemed all of the plaintiff's alleged facts to be true and entered summary judgment in favor of the plaintiff. The court also awarded treble damages based upon defendant's conduct.

In the subsequent adversary proceeding in bankruptcy to determine the dischargeability of the judgment debt, the defendant/debtor argued that the scenario did not fulfill the "actually litigated" requirement for collateral

---

9. The court must emphasize that it is the state court's finding that defendant committed battery that operates as an estoppel, rather than any subsequent determination concerning the award of actual or punitive damages. Because "[i]t is the nature of the act, not the extent or quantum of liability that is examined under § 523(a)(6)," *In re Daghighfekr,* 161 B.R. 685, 687 (9th Cir. BAP 1993), the damages the court awarded are not relevant to a determination of dischargeability. Indeed, had the debtor filed bankruptcy after the state court's decision of September 1, 1992 yet prior to the hearing concerning plaintiff's damages, the preclusive effect of the court's decision that a battery occurred would be the same. *See* Restatement (Second) of Judgments § 13 cmt. g, illus. 3 (finding of liability may operate as estoppel even though damages are yet to be determined).

10. This court expresses no opinion whatsoever as to the correctness of the circuit court's findings or judgment.

estoppel. *Wien* identified two lines of authority dealing with the question. The first, which the court identified as the narrow or strict construction, was articulated by the court in *In re Dvorak*, 118 B.R. 619 (Bankr. N.D.Ill.1990).

> *Dvorak* held that entry of summary judgment satisfies the actually litigated requirement for collateral estoppel only if the party against whom the judgment was entered had proper incentive, and did in fact, fully contest the motion on its merits.
>
> \* \* \* \* \* \*
>
> The *Dvorak* approach follows a line of cases strictly construing the actually litigated requirement. This line of cases which [sic] reads the actually litigated requirement narrowly, denying collateral estoppel effect to default judgments, consent judgments, and uncontested summary judgments in all but a few cases. *Wien*, 155 B.R. at 485.

Under *Dvorak's* approach, collateral estoppel would apply to a decision entered on a summary judgment motion only if the losing party had actively opposed that motion.

▪ *Wien* disagreed with this approach. It identified a second approach to the actually litigated requirement for collateral estoppel, which it characterized as less narrow. Under this approach, whether a judgment entered after an uncontested proceeding should be given collateral estoppel effect is decided on a case-by-case basis after considering

> the extent to which a party has relied on a earlier judgment, the parties' and the court's interest in repose, the incentive the losing party had to fully litigate the earlier matter, whether the party had a fair opportunity to litigate the matter (i.e. had due notice and an opportunity to be heard) and finally whether the application of collateral estoppel to subsequent proceedings

was reasonably foreseeable. *Wien*, 155 B.R. at 485.

The court went on to conclude that:

> [u]nder the less narrow reading of the actually litigated requirement, a matter can be actually litigated for purposes of collateral estoppel when the issue had been raised by the pleadings, submitted to a jury or finder of fact, and the matter is determined after the party had notice and an opportunity to be heard. An adversarial hearing is not required in every case. *Id.*

Applying this standard to the case before it, *Wien* concluded that "[t]he summary judgment entered was not the functional equivalent of a default judgment entered against an unrepresented defendant who had never appeared." *Wien*, 155 B.R. at 486.[11]

The Ninth Circuit Court of Appeals came to a similar conclusion in *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983). The debtor, along with his corporation, was a defendant in an action brought by the federal government for reimbursement. The debtor was represented by counsel for the first sixteen months of the proceeding. The only action taken during this time was discovery by each side. The government then moved for summary judgment against the corporation and defendant's attorney asked permission to withdraw. The court refused to allow the attorney to do so. Nonetheless, the defendant did not contest the government's motion and judgment was subsequently entered against his corporation.

When debtor subsequently filed bankruptcy, both the bankruptcy court and the district court gave preclusive effect to the earlier judgment in finding the debtor personally liable for the corporation debt. While acknowledging that a default judgment was normally not given collateral estoppel effect,

---

11. The only distinguishing feature between *Wien* and the present case is that in *Wien* the defendant was represented by an attorney who actually appeared at the hearing on the summary judgment while here the defendant's second attorney had withdrawn before the motion for summary judgment was ever filed. The court does not believe that defendant's pro se status can excuse his total failure to participate in the proceeding or mandates that the court determine that this matter was not "actually litigated." The court agrees with the Tenth Circuit's determination that "the fact that a bankruptcy debtor appeared pro se in a prior state court proceeding does not lessen the collateral effect of the state court judgment." *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir.1991).

the Ninth Circuit held that under the circumstances presented, collateral estoppel was proper.

> [Debtor] did not simply give up from the outset. For sixteen months he actively participated in litigation on behalf of himself and [his corporation]. That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that the lower court did not abuse its discretion in giving collateral estoppel effect to the prior judgment and we agree, upon de novo review, that collateral estoppel properly was available to the government. *Gottheiner*, 703 F.2d at 1140.

This court fully agrees with the *Wien* and *Gottheiner* courts and believes that the Indiana courts would do so as well.

> Prospective debtors who ignore pre-bankruptcy proceedings for liquidation of debts, which may be excepted for discharge, do so at great risk to their options for the defense of dischargeability proceedings. *Wien*, 155 B.R. at 484.

As in *Wien*,

> [u]nder the undisputed facts provided by this case, it would be an abuse of the doctrine of collateral estoppel to allow [the defendant] to re-litigate here the factual issues decided by the [prior] court. The bankruptcy court does not act as an effective appellate court with jurisdiction to review the [prior] court's earlier judgment. If a debtor is not satisfied and does not wish to be bound by the [prior] court's actions, the remedy is appeal.... *Wien*, 155 B.R. at 486. *See also In re Seals*, 110 B.R. 331 (D.M.D.Tenn.1989); *In re Bursack*, 163 B.R. 302 (Bankr.M.D.Tenn.1994); *In re Greene*, 150 B.R. 282 (Bankr.S.D.Fla. 1993).

Even if collateral estoppel applies, defendant contends that this court must, nonetheless, determine what the *amount* of any nondischargeable liability may be. He argues that, even if the compensatory damages are nondischargeable, any punitive damages awarded by the state court are dischargeable. The court disagrees.

Section 523(a)(6) excepts from the scope of discharge "*any* debt ... for willful and malicious injury." 11 U.S.C. § 523(a)(6) (emphasis added). Thus, dischargeability, under § 523(a)(6), is determined by the nature of debtor's conduct, not the amount or character of the damages awarded because of it. *In re Daghighfekr*, 161 B.R. 685, 687 (9th Cir. BAP 1993). This court agrees with the decisions that have concluded § 523(a)(6) excepts from the scope of any discharge not only compensatory damages but also any punitive damages awarded as a result of a willful and malicious injury. *In re Britton*, 950 F.2d 602, 605–07 (9th Cir.1991); *In re Miera*, 926 F.2d 741, 745 (8th Cir.1991); *Stokes v. Ferris*, 150 B.R. 388, 393 (D.W.D.Tex.1992) *aff'd*, 995 F.2d 76 (5th Cir.1993); *Daghighfekr*, 161 B.R. at 687; *In re McGuffey*, 145 B.R. 582, 593–96 (Bankr.N.D.Ill.1992); *In re Schoor*, 139 B.R. 466, 468 (Bankr.W.D.Mo.1992). *See generally In re Dahlstrom*, 129 B.R. 240 (Bankr. D.Utah 1991) (citing cases both pro and contra).

Plaintiff's motion for summary judgment is granted and judgment will be entered accordingly.